**UNITED STATES of America,
Plaintiff–Appellee,**

v.

**Lloyd Steven GRISSOM, Defendant–
Appellant.**

No. 93–3332.

United States Court of Appeals,
Tenth Circuit.

Jan. 23, 1995.

Vicki Mandell–King, Asst. Federal Public Defender, Denver, CO (Michael G. Katz, Federal Public Defender, Denver, CO, with her on the brief), for defendant-appellant.

James E. Flory, Asst. U.S. Atty., District of Kan. (Randall K. Rathbun, U.S. Atty., and Kurt J. Shernuk, Asst. U.S. Atty., Dist. of Kansas, with him on the brief), for plaintiff-appellee.

Before BRORBY and McWILLIAMS, Circuit Judges, and BURCIAGA,* Senior District Judge.

BURCIAGA, Senior District Judge.

A Kansas City, Kansas grand jury returned an indictment against Defendant on January 7, 1993, charging him with ten counts of violating 18 U.S.C. § 1014 (1988). Section 1014 criminalizes the making of false statements to a federally insured financial institution. The statements the government contended were false were loan disbursement requests Defendant submitted to MidAmerican Bank & Trust Company ("MidAmerican"). On July 30, 1993, the jury convicted Defendant on counts one, two, four, five, and eight of the indictment. The jury could not reach a verdict on counts three and seven, and so the district court declared a mistrial as to those counts. The jury found Defendant not guilty on counts nine and ten. The district court dismissed count six at the close of the government's case.

Viewed in the light most favorable to the government, *United States v. Dickey*, 736 F.2d 571, 583 (10th Cir.1984), *cert. denied*, 469 U.S. 1188, 105 S.Ct. 957, 83 L.Ed.2d 964 (1985), the facts of this case are as follows. In 1989, Defendant and Richard Stokes formed the Grissom, Stokes Company ("Grissom, Stokes") as a structural concrete and flat work subcontractor. Defendant was primarily responsible for office operations, accounting and payroll. Stokes supervised the field work. In the fall of 1991, Grissom, Stokes acquired a contract to perform work for the Truman Medical Center ("Truman project"). During the same time period,

* Honorable Juan C. Burciaga, Senior District Judge, United States District Court for the District of New Mexico, sitting by designation.

Grissom, Stokes applied to MidAmerican Bank for a Small Business Administration ("SBA")-guaranteed loan in the amount of approximately $160,000 to complete the Truman project.

The SBA required Grissom, Stokes to submit documentation to MidAmerican regarding actual or intended use of the loan proceeds. Joel Richards, an officer at MidAmerican, explained to Defendant and Stokes that the bank authorized the company to use the loan proceeds solely for the Truman project. The bank insisted on the submission of draw sheets indicating that Grissom, Stokes used or would use the funds only for labor and materials for completion of the Truman project. The bank also required Grissom, Stokes to submit computer printouts of their payroll records and copies of invoices or checks relating to material and labor expenses.

Jennifer Jordan, formerly Jennifer Bean, was Defendant's secretary. She testified that she and Defendant compiled the necessary information for the draw requests the company submitted to the bank. At the direction of Defendant, Jordan omitted certain payroll documents which would have demonstrated that Grissom, Stokes incurred some payroll expenses for work other than the Truman Project. Also at the direction of Defendant, Jordan included in the draw requests checks evidencing payment to invoices that were ostensibly billed on the Truman project. In some cases, however, the checks to the vendor were for another invoice on a different job. On still other occasions, Defendant instructed Jordan, over her protests, to submit invoices from the Truman project for direct pay (*i.e.*, for the bank to pay the vendors or suppliers directly), even though Grissom, Stokes had already drawn proceeds on these same expenses.

Defendant advances numerous grounds for reversal, all of which were preserved at the trial below. First, Defendant contends that the evidence was insufficient to sustain the convictions. Second, Defendant argues the district court wrongly refused his good faith defense and theory of defense instructions. Third, the district court allegedly abused its discretion in admitting certain prior acts evidence. Fourth, Defendant asserts the district court's calculation of the amount of loss to the victim for purposes of restitution was erroneous. We exercise jurisdiction under 28 U.S.C. § 1291 and 18 U.S.C. § 3742, and affirm in all respects.

## I.

Defendant first attacks the jury's verdict on sufficiency grounds. Defendant argues that when he submitted the draw requests, he either made no false statement at the time of the original request, or any apparent falsities were the result of good faith mistakes.

In reviewing a challenge to the legal sufficiency of the evidence after the jury has returned a verdict, "we examine, in the light most favorable to the government, all of the evidence together with the reasonable inferences to be drawn therefrom and ask whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt." *United States v. Arutunoff,* 1 F.3d 1112, 1116 (10th Cir.), *cert. denied,* —— U.S. ——, 114 S.Ct. 616, 126 L.Ed.2d 580 (1993). We consider both direct and circumstantial evidence and accept the jury's resolution of conflicting evidence and its evaluation of the credibility of witnesses. *United States v. Dirden,* 38 F.3d 1131, 1140–42 (10th Cir.1994). As long as the possible inferences are reasonable, it was for the jury, not the court, to determine what may have occurred. *United States v. Johnson,* 977 F.2d 1360, 1370 (10th Cir.1992), *cert. denied,* —— U.S. ——, 113 S.Ct. 1024, 122 L.Ed.2d 170 (1993).

18 U.S.C. § 1014 prohibits the making of a false statement directed towards a federally insured financial institution. The requisite elements of a section 1014 prosecution are: (1) that the defendant made a false statement to a bank; (2) that the defendant did so for the purpose of influencing the bank's actions; (3) that the statement's falsity was material; and (4) that the defendant made the false statements knowingly. *United States v. Haddock,* 956 F.2d 1534, 1549 (10th Cir.), *reh'g en banc granted in part on other grounds,* 961 F.2d 933 (10th Cir.), *cert.*

*denied,* —— U.S. ——, 113 S.Ct. 88, 121 L.Ed.2d 50 (1992). The defendant need not have intended to harm the bank or to personally profit, *United States v. Whitman,* 665 F.2d 313, 318 (10th Cir.1981), and the bank need not have suffered actual loss in order to sustain these convictions. *Id.*

As discussed, some counts of the indictment were based on Defendant's submission of invoices from the Truman project for direct pay when the company had already drawn proceeds on these same expenses as a result of earlier requests. For example, Defendant would first request a draw so that Grissom, Stokes would have the funds to pay an expense when it accrued in the future. Defendant would later request the bank to directly pay the vendor for the same expense. Defendant argues that the fact that he later submitted material invoices for direct pay of the same expense does not necessarily demonstrate that he knew or intended that the statements he made in the earlier draw requests were false. Instead, Defendant posits that his later requests for direct pay were the result of good faith mistakes.

The jury could have believed that Defendant's original draw requests were knowingly false because he did not eventually use those requested funds to pay the expenses as he said he would in the original requests. The evidence permitted the jury to infer that Defendant falsely represented that the loan funds he originally requested would actually be used to pay future expenses or expenses already incurred on the Truman project. The fact that Defendant later requested the bank to directly pay those same expenses only reinforced this inference. Indeed, the government's case included Defendant's signed certifications that he provided to the bank in which he stated that he used the proceeds drawn from earlier requests exclusively for materials and labor on the Truman project—yet he gave the bank these certifications either after he made the requests for direct pay or contemporaneously with those requests. In addition, the government introduced evidence indicating that at the same time Defendant submitted check numbers to the bank indicating that Grissom, Stokes had paid certain material invoices, Defendant also submitted some of the same material invoices for direct pay. Most damning to Defendant was evidence of Jordan's protests and Defendant's response of "Do as you're told."

■ In counts two, four, and five, the jury convicted Defendant of submitting false statements involving a draw request for labor on the Truman project. The proof here consisted of Defendant's submission of full payroll records without attributing payroll expenses to the Truman project specifically. In a cover letter to these records, Defendant falsely sought reimbursement for more than what the payroll records attributed to the Truman project. Because MidAmerican's Joel Richards asked Grissom, Stokes for a specific accounting of those payroll costs attributable to the Truman project, Defendant argues that the bank was never harmed or misled.

■ Section 1014 punishes the making of the false statement with the intent to influence a bank's action. That the bank detected Defendant's false or misleading statements is immaterial. The government need not prove actual loss or that the bank was influenced by the statement or relied upon it in making its decision. *United States v. Copple,* 827 F.2d 1182, 1187 (8th Cir.1987), *cert. denied,* 484 U.S. 1073, 108 S.Ct. 1046, 98 L.Ed.2d 1009 (1988); *Whitman,* 665 F.2d at 318.

■ Defendant's final contention regarding the sufficiency of the evidence is that any discrepancies in the amounts requested and the amounts Grissom, Stokes actually used on the Truman project were simple good faith errors. Defendant places heavy reliance on the fact that some of these discrepancies are, in his opinion, minor, that is, $700 or smaller. The jury, however, may have believed that the discrepancies were not minor, especially if considered in the aggregate. The jury was entitled to conclude that Defendant concealed from the bank detailed breakdowns of labor and material costs in order to obtain more funds than he required for completion of the Truman project and that Defendant knowingly submitted draw requests for the same expenses more than once. We

find that sufficient evidence supported the jury's verdicts.

## II.

▆ We next address whether the district court erred in not submitting Defendant's proffered instructions to the jury. Defendant sought to submit a good faith defense instruction and a theory of the case instruction. Defendant contends that had the district court allowed the defense to submit these instructions, a reasonable jury might have believed Defendant's good faith defense.

▆ A defendant is entitled to a good faith or theory of the defense instruction if it is supported by sufficient evidence for a jury to find in defendant's favor. *Mathews v. United States,* 485 U.S. 58, 63, 108 S.Ct. 883, 886–87, 99 L.Ed.2d 54 (1988). A defendant is not entitled to an instruction which lacks a reasonable factual and legal basis. *United States v. Bryant,* 892 F.2d 1466, 1468 (10th Cir.1989), *cert. denied,* 496 U.S. 939, 110 S.Ct. 3220, 110 L.Ed.2d 667 (1990).

▆ The proposed instruction was legally justified. Good faith is a defense to violations of section 1014, in that good faith negates the requisite element of intent. *See United States v. Wilcox,* 919 F.2d 109, 111 (9th Cir.1990); *United States v. Ribaste,* 905 F.2d 1140, 1141–42 (8th Cir.1990); *United States v. West,* 666 F.2d 16, 19 (2d Cir.1981). *See also United States v. Migliaccio,* 34 F.3d 1517, 1524 (10th Cir.1994) (ruling that good faith is a defense to false statement element of mail fraud, citing cases supporting interposition of good faith defense to 18 U.S.C. § 1001—false statements to a government agency); *Haddock,* 956 F.2d at 1547 (good faith is defense to 18 U.S.C. § 656—misapplication of bank funds); *United States v. Ratchford,* 942 F.2d 702, 706–07 (10th Cir. 1991) (good faith is defense to 18 U.S.C. § 657—lending, credit and insurance institution fraud), *cert. denied,* 502 U.S. 1100, 112 S.Ct. 1185, 117 L.Ed.2d 427 (1992). The government argues the other instructions the court gave to the jury required the jury to find that Defendant knew the statements were false at the time he made them, and therefore a good faith instruction would have been superfluous. This Court has held otherwise. "In this circuit, we have held that general instructions on willfulness and intent are insufficient to fully and clearly convey a defendant's good faith defense to the jury." *Haddock,* 956 F.2d at 1547.

We find, however, that the instruction, while legally justified, lacked a reasonable factual predicate. As an initial matter, Defendant points to defense counsel's statements to the jury panel on voir dire—which are, of course, not evidence and of no consequence. Defendant's other "evidence" essentially consists of the observations that the company's accounting system was cumbersome, the Truman project was complicated, and Defendant was prone to numerous mathematical and typographical errors. However, these alleged good faith errors on other matters had little or nothing to do with the acts upon which the jury convicted Defendant. Defendant's entire course of conduct during the relevant time period was replete with instances of intentional deception. The evidence clearly demonstrated Defendant's knowledge, and the good faith clerical errors he relies upon lack any potential for refuting such knowledge. A complete review of the record convinces us that the evidence at trial, taken as a whole, did not justify the submission of Defendant's tendered good faith instruction.

Admittedly, the district court apparently denied Defendant's proposed good faith instruction for the reason that Defendant did not take the witness stand. It is unclear whether the district court erroneously believed that Defendant's testimony was an actual requirement for submission of a good faith defense instruction, or whether the court found that in the absence of any testimony from Defendant, the evidence was otherwise insufficient to warrant the instruction. Although the district court's reasoning may have been suspect, however, its conclusion was correct, and we affirm.

Defendant was also not entitled to his proposed theory of the case instruction, which included an explanation of good faith and a denial of knowing falsity. The instruction also included the following:

The amount of labor submitted to the bank for draw No. 1 was a reasonable estimate for total Truman Medical Center labor incurred through December 5, 1991. Thereafter, Ms. Jennifer (Bean) Jordan submitted labor expenses to the bank "just like the last time."

This instruction inappropriately details the evidence Defendant wished the jury to emphasize. "[I]nstructions must adequately instruct the jury on the legal principles underlying the defense; it is not enough to present the defense in wholly factual terms." *Migliaccio*, 34 F.3d at 1523. Moreover, the instruction, if given, could have led the jury to believe that the district court was putting its imprimatur on Defendant's factual theory of the case. "[S]ummaries of the evidence in the light most favorable to the defense" are more appropriate for closing argument. *United States v. Davis*, 953 F.2d 1482, 1492 (10th Cir.), *cert. denied*, —— U.S. ——, 112 S.Ct. 2286, 119 L.Ed.2d 210 (1992). *See also United States v. Barham*, 595 F.2d 231, 244 (5th Cir.1979) (theory of defense instruction properly refused when it "was essentially a recounting of the facts as seen through the rose-colored glasses of the defense...."). We affirm the district court's refusal to submit Defendant's good faith and theory of the defense instructions to the jury.

### III.

Defendant argues that the district court abused its discretion in admitting evidence of prior instances in which Defendant falsified unrelated union payroll records. The evidence was insufficiently similar to the acts charged in the indictment, Defendant contends, and therefore its probative value did not outweigh its prejudicial effect.

The government succeeded in admitting evidence that prior to September 1991, Defendant purposely underreported to labor unions the number of hours company employees had worked on construction projects and had falsified payroll records in anticipation of a union audit. The court, noting that Defendant's theory of defense was essentially lack of intent to make false statements, admitted the evidence for the limited purpose of establishing Defendant's intent, knowledge and lack of mistake pursuant to Fed.R.Evid. 404(b), and gave a limiting instruction to that effect.

This Court reviews a district court's decision to admit evidence under Rule 404(b) only for abuse of discretion. *United States v. Morgan*, 936 F.2d 1561, 1571 (10th Cir.1991), *cert. denied*, 502 U.S. 1102, 112 S.Ct. 1190, 117 L.Ed.2d 431 (1992). A defendant is presumed to be protected from undue prejudice if the following four requirements are met: (1) the government offered the evidence for a proper purpose; (2) the evidence was relevant; (3) the trial court made a Fed.R.Evid. 403 determination that the probative value of the evidence is not substantially outweighed by its potential for unfair prejudice; and (4) the district court submitted a limiting instruction. *United States v. Jefferson*, 925 F.2d 1242, 1258 (10th Cir.), *cert. denied*, 502 U.S. 884, 112 S.Ct. 238, 116 L.Ed.2d 194 (1991) (citing *Huddleston v. United States*, 485 U.S. 681, 691–92, 108 S.Ct. 1496, 1502, 99 L.Ed.2d 771 (1988)).

The government offered the prior acts evidence in question for a proper purpose. Defendant contended at trial that he lacked the intent to deceive the bank or to influence the bank's actions. Although it became clear that the evidence on Defendant's good faith was insufficient to justify an instruction, the government legitimately attempted to controvert Defendant's contention of good faith at the time the government offered the prior acts evidence.

Moreover, the evidence was highly probative on these grounds. It rendered more probable the fact that Defendant knowingly submitted false records to the bank. Defendant argues that the other acts evidence was not sufficiently similar, and therefore probative, because the payroll records submitted to the bank were not the same payroll records that Defendant had falsified for purposes of the union audit. The similarity Rule 404(b) requires is not so strict. Defendant submitted false payroll records or made false assertions in order to obtain monetary benefits for Grissom, Stokes, either from the union or from the bank. Defendant's actions in both instances were sufficiently similar to pass muster under Rule 404(b).

Defendant argues the evidence was too prejudicial because the jury may have confused the payroll records submitted to the bank with the falsified records submitted to the union. We doubt the jury had trouble distinguishing between the two sets of records. And in any event, the district court provided an adequate cautionary instruction. Defendant is not entitled to a new trial on these grounds.

## IV.

■ Finally, Defendant attacks the district court's restitutionary component of Defendant's sentence. Defendant argues that the district court wrongly totalled the monetary discrepancies in the counts of the indictment upon which the jury returned a guilty verdict. The district court calculated restitution of $16,262 based on the amount the bank advanced to Defendant as a result of his false statements. Defendant also argues the district court should have considered possible mitigation efforts he asserts the bank could have taken to reduce its losses.

■ The Victim and Witness Protection Act of 1982 ("VWPA") permits a court to order the convicted defendant to make restitution to the victim. 18 U.S.C. § 3663(a)(1) (1988 & Supp.1990). Restitution functions as a component of the sentencing process. *United States v. Wainwright,* 938 F.2d 1096, 1098 (10th Cir.1991). The factors a district court should consider are as follows:

> [T]he amount of the loss sustained by any victim as a result of the offense, the financial resources of the defendant, the financial needs and earning ability of the defendant ... and such other factors as the court deems appropriate.

18 U.S.C. § 3664(a). The government bears the burden of proving, by a preponderance of the evidence, the amount of actual loss the victim sustained as a result of the offense. 18 U.S.C. § 3664(d). In the absence of actual loss, or where the actual loss is less than the loss the defendant intended to inflict, the court may consider intended loss. *United States v. Smith,* 951 F.2d 1164, 1166 (10th Cir.1991).

■ Appellate review of the district court's factual findings is governed by a clearly erroneous standard; the calculation and amount of restitution ordered is reviewed for abuse of discretion. *United States v. Diamond,* 969 F.2d 961, 965 (10th Cir.1992); 18 U.S.C. § 3742(e).

Defendant complains of the method by which the district court calculated the amount of actual loss in this case. The district court fixed the loss at $16,262 based on the jury's guilty verdicts. Defendant further contends that the district court should have considered Defendant's proffered evidence that the bank never sought certain equipment and other collateral pledged on the loan after Grissom, Stokes defaulted. Defendant asserts the amount of the loss should have been reduced by sums recoverable by the bank in terms of collateral and accounts receivables.

Congress has authorized restitution "only for the loss caused by the specific conduct that is the basis of the offense of conviction." *Hughey v. United States,* 495 U.S. 411, 413, 110 S.Ct. 1979, 1981, 109 L.Ed.2d 408 (1990). The district court's calculated loss is exactly that. Defendant does not dispute the fact that Grissom, Stokes never repaid the loan in full. Had Defendant told the truth, the bank would not have advanced Grissom, Stokes these funds, or so the jury found. Accordingly, the $16,262, which the bank never recovered, is a reasonable estimate of the actual loss the bank sustained as the result of Defendant's false statements. Indeed, one could readily surmise that the bank lost more than $16,262. Because Defendant's company never repaid the loan, the bank's loss is actually the $16,262 it never should have advanced to Grissom, Stokes in the first place, *plus* the opportunity costs associated with loss of the use of this money over the relevant time period, which would depend on prevailing interest rates, market conditions, length of time for repayment, and other factors. In any event, the district court was well within its discretion in fixing the amount of loss at only $16,262. Because the determination of a restitution award is "by nature an inexact science," *United States v. Teehee,* 893 F.2d 271, 274 (10th Cir.1990), the loss calcu-

lation need not be precise. *Smith*, 951 F.2d at 1167 n. 5.

 Defendant's mitigation argument is unpersuasive. The Ninth Circuit has ruled that the VWPA does not require a district court to offset losses by amounts that could have been avoided through proper mitigation. *United States v. Soderling*, 970 F.2d 529, 534 n. 10 (9th Cir.1992). We agree. The purpose behind the VWPA is " 'to restore the victim to his or her prior state of well being' to the highest degree possible." *United States v. Hill*, 798 F.2d 402, 405 (10th Cir. 1986) (quoting S.Rep. No. 532, 97th Cong., 2d Sess. 30 (1982), *reprinted in* 1982 U.S.S.C.A.N. 2515, 2536). As a logical corollary to the rule that the district court may consider intended loss in lieu of actual loss, in fixing the restitution amount the district court need not hear evidence showing that the victim of the defendant's crime could have reduced its losses.

## CONCLUSION

Accordingly, the judgment of conviction and sentence is **AFFIRMED**.