**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**MAY 28 1999**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

UNITED STATES OF AMERICA,

    Plaintiff-Appellee,

v.

STANLEY C. SCHONE,

    Defendant-Appellant.

No. 98-6360
(D.C. No. CR-98-041-C)
(W.D. Okla.)

**ORDER AND JUDGMENT**[*]

Before **SEYMOUR**, Chief Judge, **EBEL**, and **MURPHY**, Circuit Judges.

Defendant-Appellant Stanley C. Schone appeals his conviction under 18 U.S.C. § 1014 for making a false statement for purposes of obtaining a bank loan. Schone argues that there was insufficient evidence to support his conviction, and that the district court erred in admitting evidence of Schone's "other bad acts."

We affirm.

---

[*] This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

## BACKGROUND

This appeal concerns a single loan in a series of small loans obtained by Defendant-Appellant Stanley Schone from Quail Creek Bank in Oklahoma City for Schone's lawn mowing and yard maintenance business, Green Grass, LLC ("Green Grass").

In April 1995, Schone started Green Grass with two other men, Shannon Self and Ray Lees. In August 1995, Self asked Schone to buy out Self's and Lees' interest in Green Grass and to exonerate them from a loan the parties had obtained from Union Bank to start the business. Schone agreed and in September 1995 spoke with Quail Creek Bank loan officer Jon Tucker McHugh about obtaining loans to buy out the other men's interests and to provide additional funds to cover start-up costs for Green Grass. Schone discussed Green Grass' financial condition with McHugh, including Green Grass' existing contracts in the Oklahoma City and Edmond areas.

Between September 1995 and April 1996, Quail Creek Bank issued four separate loans to Green Grass. The first was issued on September 28, 1995, for $14,228; the second was issued on November 9, 1995, for $2,035; the third was issued March 1, 1996, for $2,555; and the fourth was a consolidation loan issued April 25, 1996, for $17,301, which consolidated the remaining balances on the

first three loans into a single note.[1]  The only loan at issue in this appeal is the second loan, made in November 1995, for $2,035.

More than a year after these loans were issued, the FBI launched an investigation into alleged criminal activity at the Edmond Parks & Recreation and Kickingbird Golf Course in Edmond.  The FBI interviewed Schone as part of this investigation, apparently because Schone had purchase order accounts with the City of Edmond and Edmond All Sports to perform services at Kickingbird Golf Course.  Schone later became a target of the FBI investigation and was ultimately indicted on three counts of making false statements for the purpose of obtaining loans, in violation of 18 U.S.C. § 1014.   The district court dismissed the first count for insufficient evidence, and a jury acquitted Schone of the third count.  However, the jury convicted Schone on Count II, which alleged that Schone falsely told Quail Creek Bank that Green Grass had a one-year contract with the City of Edmond to maintain certain ballfields starting in February 1996; that this contract would generate income of $7,500/month or $91,500/year; and that Schone made this statement for the purpose of influencing the bank to approve his November 1995 loan.

---

[1]Quail Creek Bank later declared the fourth loan to be in default.

Count II: The November 1995 Loan

Quail Creek Bank loan officer McHugh was the government's sole witness to Schone's alleged false statement with respect to the November 1995 loan. McHugh testified at trial that when Schone came to him in September seeking the first loan, Schone told him that he was planning to bid on a significant contract with the City of Edmond. McHugh further testified that when Schone reapproached him in early November 1995 for the second loan, Schone told him that he had secured the contract with the City to maintain the ballfields. The government introduced McHugh's November 2, 1995 handwritten file memo, which stated:

> Contract on baseball fields
> Mitch & Hafer Park $91,500
> for one year
> Contract rollover at the end of one
> year to a five year roll.
> 7500/mo income

In fact, Schone did not have at that time a contract with the City of Edmond to maintain the Mitch and Hafer Park ballfields, nor did he later procure such a contract. Nonetheless, the bank issued the loan for $2,035 on November 9, 1995.

On cross-examination of McHugh, defense counsel attempted to prove that at most, Schone had merely indicated to McHugh in November 1995 that it was likely that Green Grass would get the contract with the City -- not that Green Grass already had the contract. Specifically, defense counsel elicited from

- 4 -

McHugh that he originally told the FBI during an interview that Schone told him that Schone "either had the contract or was getting the contract and that it would be a 'slam dunk.'" Defense counsel argued that Schone simply was predicting a future event, and that such predictions cannot give rise to criminal liability under 18 U.S.C. § 1014. McHugh at trial explained his FBI comment as perhaps relating to an earlier period of time when the September loan was sought. In any event, at trial McHugh was clear and unequivocal that by the time the November loan was sought, Schone had told him that he had an existing contract covering the Mitch and Hafer Park fields.

The jury convicted Schone of making the false statement, and the court sentenced Schone to a 4-year term of supervised release with a period of home confinement not to exceed 120 days, and to pay a $500 fine. Schone now appeals.

**DISCUSSION**

Sufficiency of the Evidence

In reviewing a challenge to the sufficiency of the evidence,

> we examine, in the light most favorable to the government, all of the evidence together with the reasonable inferences to be drawn therefrom and ask whether any rational juror could have found the essential elements of the crime beyond a reasonable doubt. We consider both direct and circumstantial evidence and accept the jury's resolution of conflicting evidence and its evaluation of the credibility of witnesses.

United States v. Grissom, 44 F.3d 1507, 1510 (10th Cir.) (internal quotations and citations omitted), cert. denied, 514 U.S. 1076 (1995).

18 U.S.C. § 1014 prohibits making false statements to a federally insured financial institution for the purpose of influencing that institution to act upon a loan. The government must prove: 1) that the defendant made a false statement to a bank; 2) that the defendant did so for the purpose of influencing the bank's actions; and 3) that the defendant made the false statement knowingly. See id. at 1510 (citing United States v. Haddock, 956 F.2d 1534, 1549 (10th Cir. 1992)).[2] The government need not prove that the defendant intended to harm the bank or to profit personally, or that the bank suffered actual loss. See id. (citing United States v. Whitman, 665 F.2d 313, 318 (10th Cir. 1981)). Finally, the defendant's intent to influence is what must be shown; actual reliance by the bank need not be proved in a § 1014 case. See United States v. Mitchell, 15 F.3d 953, 956 (10th Cir. 1994).

Schone argues that at most, he told McHugh in November 1995 that he might get the contract with the City. As such, he submits, this was merely an

_____

[2]Grissom, relying on Haddock, also cited as an element of § 1014 that the statement's falsity must be material. See Grissom, 44 F.3d at 1510. However, the Supreme Court later held in United States v. Wells, 519 U.S. 482 (1997), that the materiality of the false statement is not an element of a § 1014 offense. This Circuit recognized the Supreme Court's ruling in Wells in United States v. Pappert, 112 F.3d 1073, 1077 (10th Cir. 1997).

opinion regarding a possible future event – not a false statement of fact – and therefore not a violation of § 1014.

The transcript of McHugh's trial testimony reveals that any ambiguity McHugh may have expressed to the FBI with respect to Schone's contractual status with the City concerned the initial conversation Schone had with McHugh in September 1995 when Schone first approached Quail Creek Bank.  At that time, Schone mentioned to McHugh that he was going to bid on the contract.  As to the November conversation however, McHugh never equivocated; McHugh consistently and repeatedly testified that Schone told him in November 1995 that Green Grass already had the contract with the City of Edmond.  It was within the province of the jury to weigh any conflict in McHugh's testimony and reasonably conclude that Schone in fact falsely told McHugh that the contract already existed in November when Schone applied for the second loan.[3]

As a result, McHugh's testimony provided sufficient evidence to support the jury's verdict on Count II.

_____

[3]Schone argues in the alternative that, even if he had told McHugh that the contract existed, it still did not constitute a statement concerning a present fact, because the contract was not scheduled to take effect until February 1996 (three months in the future).  Whether the contract was to take effect in the future is irrelevant; the statement in November 1995 that a contract existed with the City is the falsity for which Schone was prosecuted.

Evidence of "Other Bad Acts"

Schone also argues that the district court committed reversible error by admitting prejudicial evidence of several instances of unrelated other bad acts. The government responds that the evidence was primarily intrinsic to the charged offenses, and to the extent that it was extrinsic, it was admissible under Fed. R. Evid. 404(b)[4] on the issues of motive, intent, knowledge, and absence of mistake or accident.

We review a district court's decision to admit evidence, including evidence under Fed. R. Evid. 404(b), only for abuse of discretion. See Grissom, 44 F.3d at 1513.

Schone objected at trial to the testimony of Johnny Nix, a customer who was unhappy with Green Grass' service[5]; the testimony of Schone's former partner Shannon Self, who stated that Schone had not been honest with Self about the projected income of Green Grass and that Schone had acted irresponsibly when he left equipment on the street which was impounded by police; and the

_____

[4]Fed. R. Evid. 404(b) provides in relevant part:
Evidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident . . . .

[5]On appeal, Schone also challenges the admission of testimony from customer Kathy Wallis. However, Schone did not object to her testimony below, so we consider that argument only for plain error, and we find no such error here.

testimony of Richard Malone, Senior Vice President of Quail Creek Bank, who stated that Schone improperly disposed of a piece of equipment pledged as collateral and did not thereafter turn over the proceeds to Quail Creek Bank.

The court did not abuse its discretion in admitting any of this evidence. First, Nix's testimony was properly admitted as intrinsic evidence, as it was offered to explain the circumstances that led Quail Creek Bank to declare the April 1996 consolidation loan to be in default.[6]  Second, Self's testimony was admissible under Fed. R. Evid. 404(b) as evidence of Schone's motive, intent, knowledge and absence of mistake or accident.  Self's testimony was offered to establish the background for the business relationship that was created between Green Grass and Quail Creek Bank, and to explain that Self withdrew from the company because he was disappointed with its financial performance and because Schone's income projections were not being met.  Self further attested that he took possession of the primary equipment of the company after it had been impounded, and that as a condition of returning the equipment, Self required

---

[6]McHugh testified that, prior to declaring Schone's April 1996 loan to be in default, McHugh contacted customers Johnny Nix and Kathy Wallis, asking them to pay the bank any money Green Grass earned under its contracts with them. Soon after speaking with them, he decided to declare the loan in default.  Nix testified that his business had been dissatisfied with Schone's work, and that his business terminated the contract with Green Grass.  Nix's testimony provided the jury with a basis for inferring what McHugh learned from his phone calls with the customers that led him to declare the loan in default.

Schone to obtain funds to pay off Green Grass' original bank loan. Self's statements tended to show that Schone was in a somewhat precarious financial situation when he approached Quail Creek Bank in September 1995 and thus that he had a motive to lie about Green Grass' financial condition to obtain a loan.

Finally, Richard Malone's testimony regarding Schone's improper disposition of a diesel walker mower pledged as collateral was properly admitted under Rule 404(b) on the issue of motive, intent, knowledge or absence of mistake or accident, as it showed that Schone failed to honor his known obligations regarding the bank's collateral. The court gave an appropriate limiting instruction with respect to this evidence.

## CONCLUSION

We find that there was sufficient evidence to support Schone's conviction under 18 U.S.C. § 1014 for making a false statement to a bank for purposes of obtaining a loan. We further find no abuse of discretion by the district court in admitting other acts evidence in this case. Accordingly, the judgment and evidentiary rulings of the district court are AFFIRMED.

ENTERED FOR THE COURT

David M. Ebel
Circuit Judge