**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**JUL 9 2003**

**PATRICK FISHER**
**Clerk**

**PUBLISH**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

    Plaintiff - Appellee,

v.

IVAN STEPANOVICH KRAVCHUK,

    Defendant - Appellant.

No. 02-5067

---

**Appeal from the United States District Court**
**for the Northern District of Oklahoma**
**(D.C. No. 01-CR-106-C)**

---

Kevin C. Danielson, Assistant United States Attorney (David E. O'Meilia, United States Attorney and Neal B. Kirkpatrick, Assistant United States Attorney with him on the brief), Northern District of Oklahoma, for Plaintiff-Appellee.

Art Fleak, Attorney at Law, Tulsa, Oklahoma, for Defendant-Appellant.

---

Before **EBEL, BALDOCK** and **KELLY**, Circuit Judges.

---

**EBEL**, Circuit Judge.

Defendant-Appellant, Ivan Stepanovich Kravchuk, was tried in federal court for violation of 18 U.S.C. § 2113(b)[1] by theft from an automatic teller machine (ATM). During closing arguments, he moved for a new trial on the basis of prosecutorial misconduct. His motion was denied, and he was convicted. After conviction, Kravchuk again moved for a mistrial and his motion was again denied. The district court sentenced Kravchuk to pay $34,699.51 in victim restitution, to serve twenty-seven months in prison, and three years on supervised release, three months of which was to be on home detention. The length of his prison term also reflected enhancement of his sentence for use of a minor in a crime under U.S.S.G. § 3B1.4 because, although Kravchuk was eighteen at the time of the crime, his co-participants were minors.

On appeal, Kravchuk challenges the district court's refusal to grant him a new trial on the basis of alleged prosecutorial misconduct and alleged irregularities in admitting evidence regarding prior crimes under Federal Rule of Evidence 404(b).[2] He also challenges the district court's determination of victim

---

[1] Title 18 U.S.C. § 2113(b) reads: "Whoever takes and carries away, with intent to steal or purloin, any property or money or any other thing of value exceeding $1,000 belonging to, or in the care, custody, control, management, or possession of any bank, credit union, or any savings and loan association, shall be fined under this title or imprisoned not more than ten years, or both."

[2] Rule 404(b) states that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith. It may, however, be admissible for other purposes, such as

(continued...)

restitution, its enhancement of his sentence for use of a minor in the commission of his crime, its failure to put its reasoning for his sentence on the record, and its failure to reduce its findings to writing regarding facts he challenged in his presentence report.

Because none of Kravchuk's objections regarding the conduct of the trial have merit, we uphold the district court's denial of a new trial and **AFFIRM** Kravchuk's conviction. We approve the district court's determination of victim restitution, and join our sister circuits in finding that the Sentencing Guidelines' enhancement under U.S.S.G. § 3B1.4 for the use of a minor may be applied to defendants between the ages of eighteen and twenty-one. We agree, however, that the district court failed to put on the record its reasoning for Kravchuk's sentence, including any upward departure for the three months of home confinement, which is to be used as a substitute only for imprisonment. U.S.S.G. §5D1.3(e)(2).[3] It also failed to reduce its findings to writing regarding the facts challenged in Kravchuk's presentence report. We therefore **REMAND** for the

---

[2](...continued)
proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident, provided that upon request by the accused, the prosecution in a criminal case shall provide reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any such evidence it intends to introduce at trial."

[3] The text of U.S.S.G. §5D1.3(e)(2) reads: "Home detention may be imposed as a condition of supervised release, but only as a substitute for imprisonment."

district court to provide a more complete explanation of Kravchuk's sentence, including any upward departure it made for the home confinement, and for it to reduce its factual findings regarding the contested parts of Kravchuk's presentence report to writing.

## BACKGROUND

Eighteen-year-old Ivan Stepanovich Kravchuk had a long criminal record as a juvenile. In January or February of 2001, Kravchuk and a gang of young co-participants removed an ATM machine from a local mall in Tulsa, Oklahoma, and, in June of 2001, they attempted to remove an ATM machine from a convenience store in South Tulsa County, but were thwarted by the size of the machine and the fact that it was bolted to the floor. Early in the morning of July 24, 2001, Kravchuk and the same group of co-participants also burgled the automatic teller machine (ATM) and removed the contents of the store's safe at the Minute Stop convenience store in Broken Arrow, Oklahoma. Kravchuk was indicted on a federal theft charge for the crimes in Broken Arrow on October 2, 2001, and convicted by a jury on February 5, 2002. Kravchuk's co-participants in all of the ATM burglaries testified against him during his federal trial.

One of the young co-participants also unexpectedly testified during trial that Kravchuk had threatened to kill them if they ever spoke of the various crimes

they had committed with him. This revelation surprised both parties and the defense moved for a mistrial on the basis of unfair prejudice, but its motion was denied by the district court.

Evidence of the first burglaries Kravchuk had committed involving ATMs was admitted at trial under Federal Rule of Evidence 404(b). Kravchuk testified on his own behalf, and the prosecutor accused him in closing arguments of having "lied, lied, and lied" about the degree of his involvement in the case. The jury found Kravchuk guilty.

At sentencing, the district court made three important decisions. First, it enhanced Kravchuk's sentence by two levels for "use of a minor" in the commission of a crime under U.S.S.G. § 3B1.4.[4] Second, it determined, based on testimony presented at trial, that Kravchuk should pay $34,699.51 in restitution for losses from the theft at Broken Arrow. According to the Presentence Report, the restitution amount of $34,699.51 included $14,280 payable to Stillwater National Bank (the owner of the ATM), $9,000 payable to the Minute Stop Convenience Store in Broken Arrow, Oklahoma, and $11,419.51 payable to The Hartford, the convenience store's insurer. The district court did not, however,

---

[4] The text of U.S.S.G. § 3B1.4 reads: "If the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding detection of, or apprehension for, the offense, increase [his base offense level] by 2 levels."

reduce its factual findings to writing regarding how much Kravchuk was to pay the owner of the convenience store for the contents of his store's safe when Kravchuk disputed the presentence report. Third, it determined that Kravchuk should serve twenty-seven months in prison and a three-year term of supervised release following his imprisonment, at least the first three months of which were to be spent in home confinement. It did not give its reasons for the length of the term of supervised release or for the three months of home confinement.

We review Kravchuk's objections to each of the district court's decisions, but remand only on his arguments regarding the district court's failure to provide the basis of its decision on his supervised release, including any upward departure it made in requiring Kravchuk to serve three months in home confinement, and for its failure to reduce to writing its findings regarding the contested parts of Kravchuk's presentence report.

## DISCUSSION

The district court exercised jurisdiction over this criminal case under 18 U.S.C. § 3231. We hear this appeal of Kravchuk's conviction and sentence pursuant to 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

# I. PROSECUTORIAL MISCONDUCT

When defense counsel contemporaneously objects to a prosecutor's comment at trial and moves for a mistrial, we review a district court's decision to deny his motion for abuse of discretion. United States v. Villa-Chaparro, 115 F.3d 797, 803 (10th Cir. 1997).

We apply a two-part test in reviewing claims of prosecutorial misconduct. First, we decide whether the conduct was improper. United States v. Gordon, 173 F.3d 761, 769 (10th Cir. 1999). Second, we decide whether the conduct, if improper, warrants reversal. Id. Generally "a criminal conviction is not to be lightly overturned on the basis of a prosecutor's comments standing alone, for the statements or conduct must be viewed in context; only by so doing can it be determined whether the prosecutor's conduct affected the fairness of the trial." United States v. Young, 470 U.S. 1, 11 (1985); see also Tillman v. Cook, 215 F.3d 1116, 1129 (10th Cir. 2000).

Kravchuk proffers two arguments regarding alleged prosecutorial misconduct. First, he argues that the district court erred in denying his motions for a mistrial and new trial when the prosecutor stated in closing that Kravchuk had "lied and lied and lied." Second, he argues that it constituted prosecutorial misconduct for the prosecutor not to have known ahead of time that a witness would reveal that Kravchuk had threatened his co-participants. On this second

argument, however, Kravchuk does no more than mention that the argument exists, and cites no law on point. We cannot make a party's arguments for him, Gross v. Burggraf Constr. Co., 53 F.3d 1531, 1546 (10th Cir. 1995), so we limit our discussion here to Kravchuk's argument that the prosecutor's own statement in closing argument constituted misconduct meriting mistrial and grant of the motion for a new trial.[5]

In making the statement about Kravchuk lying, the prosecutor may have been responding to the credibility battle that defense counsel had been waging for the vote of the jury. In his closing argument, defense counsel repeatedly suggested that three of Kravchuk's co-conspirators who testified against him had been motivated to lie in order to get a better deal from the government. Regarding one of the co-participants, defense counsel insinuated that "he may not be telling the truth because he doesn't want [to be punished]. Well, then, you don't know who's telling the truth." Tr. at 316-17. Defense counsel later commented that "we have no guarantee that anybody is telling the truth in life, especially in the courtroom when you have some very important things involved here." Id. at 322. Finally, defense counsel charged that one of the questions for

---

[5] We will, however, in the next section treat Kravchuk's argument for a mistrial or for a new trial on the basis of the co-participant's surprise testimony, as opposed to the prosecutor's knowledge of whether the witness would make that statement.

the jury was whether each witness had "any particular reason not to tell the truth[.] Well, they did. They're all in trouble." Id. at 323.

The prosecutor began his rebuttal by urging the jury to consider all of the witnesses' demeanors and who else might have had an incentive to lie. In the prosecutor's words: "Do you really think that Mr. Joyce was the leader [?] [A]nd that fellow who sat there stone-faced on that stand and lied and lied and lied . . . ." Id. at 326. This was the point at which defense counsel objected.

In the presence of the jury, the district court overruled defense counsel's motion for mistrial, explaining that "[i]t will be the jury that makes the determination as to the credibility of the witnesses." Id. at 326. The district court then emphasized in its final instructions that the jury's mission was to determine the credibility of witnesses for itself and that it could not consider any statement by a lawyer to be testimony. It told the jury: "You should decide whether you believe what each witness had to say, and how important the testimony was. In making that decision you may believe or disbelieve any witness, in whole or in part." Doc. 31 at 21. Regarding witnesses with prior convictions or plea agreements, the district court specifically instructed the jury that, when such witnesses testify for the government, "[y]ou must consider and determine whether such testimony has been affected by the benefit received." Id. at 23. Finally, regarding the impeachment of witnesses, the district court instructed the jury that

"[i]f you believe that any witness has been so impeached, then it is your exclusive province to give the testimony of that witness such credibility or weight, if any, as you may think it deserves." Id. at 24 (emphasis added).

We find that, although the prosecutor's statement may have been improper, it was not reversible error. Although the Tenth Circuit has characterized as "unnecessary" and "unwarranted" a closing argument in which a prosecutor called a defendant a "liar," United States v. Nichols, 21 F.3d 1016, 1019 (10th Cir. 1994), it is not per se prosecutorial misconduct to refer to testimony as a lie, see, e.g., United States v. Hernandez-Muniz, 170 F.3d 1007, 1012 (10th Cir. 1999).

Here the district court's instructions cured any potential defect caused by the prosecutor's comments. For example, in United States v. Broomfield, 201 F.3d 1270, 1276 (10th Cir. 2000), we held that a district court had mitigated the impact of the prosecutor improperly vouching for witnesses when it "repeatedly instructed the jurors that they were the sole and exclusive judges" of witness credibility and that "the statements and arguments of counsel are not to be considered evidence in this case." Id. at 1277.

Moreover, the district court had already found, and we agree on review, that because the evidence presented at trial of Kravchuk's participation in the burglary was "overwhelming," the prosecutor's statement in closing argument about Kravchuk being a liar was at most harmless error. See United States v.

<u>Kornegay</u>, 885 F.2d 713, 718-19 (10th Cir. 1989) (finding that harmless error analysis applies to cases of alleged prosecutorial misconduct); <u>United States v. Record</u>, 873 F.2d 1363, 1376-77 (10th Cir. 1989) (same).

Accordingly, the prosecutor's statements, although arguably improper, do not merit reversal. The district court did not abuse its discretion in denying Kravchuk's motion for a new trial.

## II. THE SURPRISE TESTIMONY OF KRAVCHUK'S CO-PARTICIPANT

We review a district court's decision not to grant a mistrial or new trial for abuse of discretion. <u>United States v. Caballero</u>, 277 F.3d 1235, 1242 (10th Cir. 2002); <u>United States v. Austin</u>, 231 F.3d 1278, 1281 (10th Cir. 2000). A mistrial may only be granted where a defendant's right to a fair and impartial trial has been impaired. <u>Caballero</u>, 277 F.3d at 1242.

At trial, a witness against Kravchuk spontaneously revealed that the defendant had threatened that "if we open our mouths he would kill us." Tr. at 81. The defense moved for a mistrial on the basis of prejudice. But the district court found that Kravchuk was not entitled to a new trial for two reasons. First, the witness's statement had been spontaneous so it would have been impossible for the prosecution to have warned the defense that it was coming in advance under Federal Rule of Evidence 404(b). Second, in the context of the rest of the

evidence presented at trial, the witness's statement had not caused prejudice so as to violate Kravchuk's substantive rights.

On appeal, Kravchuk admits that the prosecutor did not know what the witness would say, but nonetheless argues against both of the district court's findings. He continues to assert that (1) he, as the defendant, should have been given warning about the statement because it related to a prior bad act under Rule 404(b);[6] and (2) the statement was so prejudicial as to have tainted the entire trial in violation of Rule 403.[7] We disagree.

Kravchuk's argument under Rule 404(b) fails for two reasons. First, the district court correctly read the notice requirement in Fed. R. Evid. 404(b) as being triggered only when the government intends to solicit testimony of prior bad acts. Fed. R. Evid. 404(b) ("[The government must provide] reasonable notice in advance of trial, or during trial if the court excuses pretrial notice on good cause shown, of the general nature of any . . . evidence it intends to introduce at trial."); see also United States v. Vega, 188 F.3d 1150, 1154 (9th Cir. 1999) ("To make [a determination under Rule 404(b)], we must look at two things: (1) did the government intend to introduce this evidence at trial; and (2) if

---

[6] The full text of Rule 404(b) is reproduced supra at n.2.

[7] Rule 403 reads: "Although relevant, evidence may be excluded if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence."

so, did it provide reasonable notice."). In Kravchuk's case, the government did not know about the witness's testimony so as to warn the defendant, and therefore Rule 404(b)'s notice provision cannot apply. Second, Rule 404(b) applies only to prior bad acts extrinsic to the crime charged. United States v. Arney, 248 F.3d 984, 992 (10th Cir. 2001). The act that the witness described here was part and parcel of the events for which Kravchuk was on trial.

Kravchuk's argument under Rule 403 that the testimony was unfairly prejudicial and so should be grounds for a mistrial also fails for two reasons. First, Rule 403 is not the correct standard for evaluating whether a defendant should be granted a mistrial. Under Tenth Circuit precedent, a mistrial should only be granted when a defendant's fundamental right to a fair and impartial trial has been impaired. Cabellero, 277 F.3d at 1242. Evidentiary rulings under Rule 403 may be merely harmless error, see, e.g., United States v. Thomas, 86 F.3d 647, 655 (7th Cir. 1996), and therefore do not necessarily reach fundamental rights. And nothing about the witness's unplanned comment changed the basic nature of Kravchuk's trial. As the district court found, the cumulative evidence presented at trial of the defendant's participation in the robbery was "overwhelming." Second, even if Rule 403 applied, there was no error in the district court's conclusion that the evidence was relevant to the case and not unfairly prejudicial. The witnesses's statement gave important insight into

- 13 -

Kravchuk's actions in directing the commission of the crime and in keeping control over his co-participants.

Accordingly, we will not reverse the district court's refusal to grant a mistrial or new trial.

## III.  EVIDENCE OF KRAVCHUK'S PRIOR CRIMES

We review a district court's decision to admit evidence under Fed. R. Evid. 404(b) for abuse of discretion.  United States v. Grissom, 44 F.3d 1507, 1513 (10th Cir. 1995).  Under Rule 404(b), evidence of prior bad acts may be admitted for "proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident."

Kravchuk's co-participants testified at his trial about committing two prior crimes with him involving ATMs in addition to the theft in Broken Arrow upon which the federal charges were based.  In one incident, they successfully removed an ATM from a shopping mall in Tulsa; in another incident, they attempted to remove an ATM from a store in South Tulsa County, but were thwarted by the size of the machine and the fact that it was bolted to the floor.  Both events occurred within seven months of the crime for which Kravchuk was charged in federal court.

On appeal, Kravchuk argues that the district court improperly allowed evidence of his prior crimes involving ATMs to be presented at trial. He alleges that the prior crimes were too remote in time to be relevant, and that they were not offered for a proper purpose under the rule. See Fed. R. Evid. 404(b).

We find, however, that the evidence was properly admitted under Rule 404(b) for proof of Kravchuk's plan. Kravchuk was on trial for the burglary of ATMs. The prior bad acts had also involved the burglary or attempted burglary of ATM machines. Moreover, the prior bad acts involved the same group of co-participants who aided Kravchuk in the crime charged. Finally, the two prior bad acts occurred within seven months of the time of the federal crime – close enough in proximity to show that Kravchuk had not necessarily changed his modus operandi. These similarities show that Kravchuk had plainly developed a plan and stable team of co-participants to burglarize ATM machines. Accordingly, the district court's decision to admit the evidence of prior bad acts was not an abuse of discretion.

## IV. CALCULATION OF VICTIM RESTITUTION

In evaluating the district court's award of victim restitution, we review its factual findings for clear error. Grissom, 44 F.3d at 1514. We review its calculation and ultimate award of restitution for abuse of discretion, recognizing that the calculation of an award is not an exact science. Id.; United States v. Teehee, 893 F.2d 271, 274 (10th Cir. 1990). Defendants are entitled to notice of an estimate of victim restitution amounts prior to sentencing under 18 U.S.C. §§ 3664(a), (d)(5).[8]

At his sentencing on April 29, 2002, the district court ordered Kravchuk to pay $34,699.51 in restitution. According to the Presentence Report, that amount included $14,280 payable to Stillwater National Bank (the owner of the ATM), $9,000 payable to the Minute Stop Convenience Store in Broken Arrow,

_____

[8] Title 18 U.S.C. § 3664(a) reads: "For orders of restitution . . . the court shall order the probation officer to obtain and include in its presentence report . . . information sufficient for the court to exercise its discretion in fashioning a restitution order. The report shall include, to the extent practicable, a complete accounting of the losses to each victim, any restitution owed pursuant to a plea agreement, and information relating to the economic circumstances of each defendant. If the number or identity of victims cannot be reasonably ascertained, or other circumstances exist that make this requirement clearly impracticable, the probation officer shall so inform the court."

The notice provision of 18 U.S.C. § 3664(d)(5) reads: "If the victim's losses are not ascertainable by the date that is 10 days prior to sentencing, the attorney for the Government or the probation officer shall so inform the court . . . ."

Oklahoma, and $11,419.51 payable to The Hartford, the convenience store's insurer. In testimony at trial, the owner of the convenience store claimed that Kravchuk and his co-participants had taken $16,500 out of the store's safe. On April 1, 2002, Kravchuk objected to the inclusion of the $16,500 in his Presentence Report, and the Probation Office revised the figure down to $9,000, based on the statements of Kravchuk's co-participants in the theft and information gathered during the investigation. The district court adopted the Probation Office's revised figure of $9,000 in its final sentence.

On appeal, Kravchuk first argues that the district court did not follow proper procedure in entering its judgment for the award. He asserts that the government failed to notify the court pursuant to 18 U.S.C. § 3664(d)(5), and by extension him, that a victim's losses were not ascertainable 10 days prior to sentencing. He next argues that there was no evidentiary basis in the record for the district court's adoption of the $9,000 figure.

We find Kravchuk's argument regarding procedure to be without merit based on the filings in the record. First, 18 U.S.C. § 3664(d)(5) was not implicated in Kravchuk's case because, although there was a dispute about the appropriate amount of money at stake, at no point before sentencing did either party conclude that a victim's loss from the burglary was not ascertainable. Second, even if 18 U.S.C. § 3664(d)(5) had applied, its 10-day notice provision

would have been satisfied.  Kravchuk filed his objection on April 1, 2002, twenty-eight days before his sentencing on April 29, 2002, that the only disputed dollar amount for victim restitution in the presentence report was too high.  The Probation Office did revise the figure downward in response.

We find that Kravchuk's next argument that there was no evidentiary basis for the district court's adoption of the $9,000 figure also fails based on the record.  We recognize that the determination of restitution is not an exact science and that the calculation of a loss need not be precise.  Grissom, 44 F.3d at 1514-15; Teehee, 893 F.2d at 274.

The district court explained from the bench that its estimate of the loss was based both on the testimony presented at trial and the investigation that the Probation Office had done in preparing the presentence report.[9]  Kravchuk solely disputed the amount of restitution payable to the owner of the convenience store. The owner of the store had testified he had two weeks' worth of receipts in his safe, totaling $16,500 in cash, but Kravchuk argued that this amount was opportunistically inflated.  After Kravchuk's objection, the Probation Office revised the figure down to $9,000 based on, among other things, the testimony of Kravchuk's co-participants at trial about the amount of money each of them had

---

[9] In oral argument, the parties affirmed that the district court had access to the transcript of the testimony at trial to refresh its recollection if necessary.

- 18 -

kept from the crime. On the basis of this evidence, the district court agreed that nine thousand dollars was a reasonable estimate of what Kravchuk may have taken from the safe.

Accordingly, the district court did not clearly err in its factual findings, and did not abuse its discretion in the calculation of the award. We will not reverse its decision regarding victim restitution.

## V. ENHANCEMENT FOR "USE OF A MINOR" IN THE COMMISSION OF A CRIME

We review the district court's legal interpretation of the Sentencing Guidelines de novo. United States v. Suitor, 253 F.3d 1206, 1209 (10th Cir. 2001).

The Violent Crime Control and Law Enforcement Act of 1994 directed the United States Sentencing Commission to promulgate sentence enhancements for a "defendant 21 years of age or older . . . if the defendant involved a minor [less than 18 years old] in the commission of the offense." Pub. L. 103-322, § 140008, 108 Stat. 1796 (1994). The Sentencing Guideline that the Commission developed, however, made no mention of what age a defendant needed to be for the guideline to apply. It simply stated that "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense or assist in avoiding

detection of, or apprehension for, the offense, [a court should enhance his sentence] by 2 levels." U.S.S.G. § 3B1.4.

Kravchuk argues that, pursuant to the directive of the congressional statute, no defendant under the age of twenty-one should have his sentence enhanced for "use of a minor" during the commission of a crime. The Sixth Circuit agreed with this interpretation in United States v. Butler, 207 F.3d 839, 849–50 (6th Cir. 2000) (Jones, J., concurring and writing for the court in adopting this interpretation). The reasoning of that decision would be applicable to Kravchuk because he was eighteen at the time of the offense and the people with whom he committed the crimes were minors.

But two other Circuits have examined the issue and have found that the guideline should not be invalidated on this basis. They note that Congress certainly intended the enhancement to apply to those over twenty-one, but that Congress's directive made no mention of any special policy for those under twenty-one. United States v. Murphy, 254 F.3d 511, 512-13 (4th Cir. 2001); United States v. Ramsey, 237 F.3d 853, 856–57 (7th Cir. 2001). The congressional directive then does not conflict with the plain language of the guideline, and the guideline is therefore valid. Murphy, 254 F.3d at 512-13; Ramsey, 237 F.3d at 857.

Moreover, as the Seventh Circuit noted in <u>Ramsey</u>, Congress had 180 days to review guidelines before they went into effect and choose not to modify or otherwise to disapprove of the amendment extending liability for the use of minors to defendants under the age of twenty-one. <u>Id.</u> at 858.

We have not specifically addressed the issue of whether the sentencing enhancement under U.S.S.G. §3B1.4 for use of a minor should be applied to defendants aged eighteen to twenty. Our case law, however, gives great deference to the plain language of guidelines. We interpret them as though they were statutes, meaning that we follow their "clear, unambiguous language if there is no manifestation of contrary intent." <u>United States v. Gacnik</u>, 50 F.3d 848, 852 (10th Cir. 1995); <u>United States v. Goldbaum</u>, 879 F.2d 811, 813 (10th Cir. 1989).

There is no direct conflict in the wording of the guideline with Congress's directive that it apply to defendants age twenty-one and over. Accordingly, we follow the reasoning of the Fourth and Seventh Circuits in holding that U.S.S.G. §3B1.4 is valid as applied to defendants aged eighteen to twenty. We uphold the district court's application of the guideline to Kravchuk on this basis.

## VI.  THE FAILURE TO STATE REASONS FOR KRAVCHUK'S TERM AND CONDITIONS OF SUPERVISED RELEASE

We review a district court's decisions on supervised release for abuse of discretion.  United States v. Pugliese, 960 F.2d 913, 915 (10th Cir. 1992).

A sentence for supervised release should be, at minimum, remanded if a district court fails to give its reasons for imposing the sentence on the record.  See United States v. Zanghi, 209 F.3d 1201, 1205 (10th Cir. 2000).  When the district court has not given its reasons for the imposition of a sentence on the record, we "decline to enter the 'zone of appellate speculation' in reviewing for abuse of discretion."  Id.

Kravchuk was sentenced to twenty-seven months imprisonment plus three years of supervised release, at least the first three months of which he was to serve in home confinement.  The maximum term of imprisonment for Kravchuk's sentence under the guidelines otherwise was twenty-seven months.

A district court must impose a term of supervised release on a defendant when his term of imprisonment is for more than one year.  U.S.S.G. §5D1.1(a).[10] The appropriate term of supervised release for Class C felonies, such as

---

[10]  The text of U.S.S.G. §5D1.1(a) reads: "The court shall order a term of supervised release to follow imprisonment when a sentence of imprisonment of more than one year is imposed, or when required by statute."

Kravchuk's crime, is two to three years. U.S.S.G. §5D1.2(a)(2).[11] Nevertheless, the condition of home confinement is only to be substituted for imprisonment. U.S.S.G. §5D1.3(e)(2).[12] Kravchuk argues on appeal both that the district court should not have increased his sentence of imprisonment (or the equivalent) beyond the guideline maximum in requiring three months of home confinement, and that the district court failed to record its reasons on the record for the term and conditions of any of the three years of supervised release it gave him.

The government concedes that the three months of home detention was improper in the absence of an explicit departure upward from the guideline, and we agree. Accordingly, we remand for resentencing on the matter of post-incarceration home detention.[13]

The government also concedes that the district court failed to provide its reasons for the terms and conditions of the remainder of Kravchuk's supervised release on the record. It argues, however, that our precedent in Zanghi can be distinguished from Kravchuk's case because we could speculate about what the

---

[11] The text of U.S.S.G. §5D1.2(a)(2) reads: "[I]f a term of supervised release is ordered, the length of the term shall be . . . at least two years but not more than three years for a defendant convicted of a Class C or D felony."

[12] See the text of U.S.S.G. §5D1.3(e)(2), reproduced supra at n.3.

[13] We note that the three months of home detention might be justified if the district court decided to impose an upward departure under the Guidelines, but the record on appeal contains no such existing determination by the district court.

district court intended when it imposed the sentence. But this very argument violates the principal of <u>Zanghi</u>. We will not enter the "zone of appellate speculation," and postulate about what the district court's reasons were for the imposition of the sentence when it did not provide them to us on the record. <u>Zanghi</u>, 209 F.3d at 1205.

Accordingly, we REMAND for the district court to state its reasons on the record for imposing the three months to be served in home confinement, and to make explicit its upward departure from the guidelines in imposing this condition. In the alternative, the district court must resentence Kravchuk in accordance with the guidelines. <u>Id.</u>

## VII. THE FAILURE TO MAKE PARTICULARIZED FINDINGS REGARDING THE CONTESTED PARTS OF KRAVCHUK'S PRESENTENCE REPORT AND TO REDUCE THEM TO WRITING

We review a district court's compliance with the Federal Rules of Criminal Procedure de novo. <u>United States v. Roman-Zarate</u>, 115 F.3d 778, 781 (10th Cir. 1997).

Our case law interprets Federal Rule of Criminal Procedure 32(c)(1)[14] to mandate not only that findings regarding the contested parts of presentence reports be made on the record, but that they be reduced to writing. See, e.g., United States v. Henning, 77 F.3d 346, 349 (10th Cir. 1996) (citing United States v. Pedraza, 27 F.3d 1515, 1530-31 (10th Cir. 1994)). The government does not contest that the district court failed to reduce its findings regarding the contested amount of victim restitution in Kravchuk's presentence report to writing, but argues that the issue is moot in Kravchuk's case.

The district court found that Kravchuk owed $9,000 to the convenience store in Broken Arrow for the cash he took from the store's safe. Kravchuk objected at sentencing, and objects again on appeal, that this amount should have been less than $9,000. Because there was evidence in the record to support the district court's factual determination of the $9,000, we upheld the substance of its

---

[14] Rule 32(c)(1) read: "At the sentencing hearing, the court must afford counsel for the defendant and for the Government an opportunity to comment on the probation officer's determinations and on other matters relating to the appropriate sentence, and must rule on any unresolved objections to the presentence report. The court may, in its discretion, permit the parties to introduce testimony or other evidence on the objections. For each matter controverted, the court must make either a finding on the allegation or a determination that no finding is necessary because the controverted matter will not be taken into account in, or will not affect, sentencing. A written record of these findings and determinations must be appended to any copy of the presentence report made available to the Bureau of Prisons." Rule 32(c)(1) has been reformatted and the current version of the Rule appears in several subsections of Fed.R.Crim.P. 32(i).

finding. We now address, however, the consequences of its failure to reduce the reasons for its finding regarding the $9,000 to writing.

The government asserts that this issue is moot in Kravchuk's case because, even if the district court had accepted Kravchuk's figure for this component of the restitution as $6,720 instead of $9,000, the total sum of his restitution would still have exceeded the threshold of $30,000 for the category length of his sentence. U.S.S.G. § 2B1.1.[15] We disagree that this fact renders Kravchuk's argument moot. It was not only the term of Kravchuk's supervised release that was at issue in the district court's determination of the appropriate number, but most immediately the amount of restitution that he must pay to his victims under 18 U.S.C. § 3663(a)(1)(A)[16] and U.S.S.G. § 5E1.1(a)(1).[17] It certainly would be significant to Kravchuk to be able to pay $2,280 less to those victims depending on how the court reached its conclusion.

---

[15] Under U.S.S.G. § 2B1.1, theft with a value over $30,000, but less than $70,000, increases the offense level for calculating a defendant's sentence by six points.

[16] 18 U.S.C. § 3663(a)(1)(A) reads: "The court, when sentencing a defendant . . . may order, in addition to or . . . in lieu of any other penalty authorized by law, that the defendant make restitution to any victim of [the] offense . . . ."

[17] U.S.S.G. § 5E1.1(a)(1) reads: "In the case of an identifiable victim, the court shall . . . enter a restitution order for the full amount of the victim's loss . . . ."

Accordingly, we REMAND to the district court for it to reduce to writing its factual findings regarding Kravchuk's objections to his presentence report.

## CONCLUSION

For the reasons stated above, we AFFIRM Kravchuk's conviction. We REMAND, however, to the district court for it to provide an explanation for imposing the term and conditions of supervised release on Kravchuk, including any upward departure it may have chosen to make for the three months of home confinement, or for it to resentence him in accordance with the guidelines. We additionally REMAND for the district court to reduce to writing its factual findings regarding the $9,000 in restitution to which Kravchuk objected in his presentence report.