**United States Court of Appeals**
**FOR THE EIGHTH CIRCUIT**

_____

No. 96-4143

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *     Appeals from the United States
                                   *     District Court for the Western
Errol Douglas Cain,                *     District of Missouri.
                                   *
          Appellant.               *


_____

No. 96-4144

_____

United States of America,          *
                                   *
          Appellee,                *
                                   *
     v.                            *
                                   *
Paul Stephen Cain,                 *
                                   *
          Appellant.               *

_____

Submitted:  September 10, 1997

Filed:  January 26, 1998
_____

Before LOKEN, BRIGHT, and MORRIS SHEPPARD ARNOLD, Circuit Judges.
_____

MORRIS SHEPPARD ARNOLD, Circuit Judge.

Errol Cain and Paul Cain, who are brothers, both pleaded guilty in late 1995 to one count of conspiracy to commit mail fraud and one count of mail fraud.  The conspiracy charge related to a scheme to induce several people to invest in the company that employed the defendants by knowingly misrepresenting to those people the return on the investment and the safety of the investment.  The mail fraud count related to a letter sent to obtain the proceeds of an insurance policy owned by one investor.  Errol Cain and Paul Cain were vice-presidents of the company.  James Cain, a third brother, was the president of the company and was convicted by a jury of seven counts connected with the same scheme.  See United States v. Cain, 128 F.3d 1249 (8th Cir. 1997).

The district court sentenced Errol Cain to 41 months in prison and Paul Cain to 55 months in prison.  Both defendants assert that the district court erred when it refused to adopt certain statements contained in their plea agreements with the government and, upon doing so, also refused to allow the defendants to withdraw their guilty pleas.  In addition, both defendants challenge the district court's factual findings, for sentencing purposes, on the amount of loss and on whether one investor was an unusually vulnerable victim.  Individually, each defendant also disputes various other rulings of the district court.  We affirm Errol Cain's conviction (Paul Cain did not

appeal his conviction), vacate both sentences, and remand the cases for limited further proceedings consistent with this opinion.

## I.

In separate plea agreements, each defendant and the government stated that "the parties are in agreement" that the "amount of the total loss ... readily provable" was "approximately $298,851.61." Each defendant and the government further stated that the relevant defendant "admits ... as the factual basis for the plea" that he entered the conspiracy in September, 1993.

In determining the sentence for each defendant, the district court disagreed with the amount of loss specified in the plea agreements and found, instead, that the amount of loss for sentencing purposes (and hence for restitution as well), see U.S.S.G. § 2F1.1(b)(1), was $524,296.61. The effect of that finding was to add ten levels to each defendant's base offense level, see U.S.S.G. § 2F1.1(b)(1)(K), rather than the eight levels associated with an amount of loss between $200,000 and $350,000, see U.S.S.G. § 2F1.1(b)(1)(I).

With respect to Paul Cain, the district court also disagreed with the specified date of Paul Cain's entry into the conspiracy and found, instead, that he entered the conspiracy in mid-August, 1993. Because criminal history points are date-sensitive, see U.S.S.G. § 4A1.2(e)(1), the effect of that finding was to add two more prior convictions to Paul Cain's relevant criminal history. That addition carried with it a supplemental four points for Paul Cain's criminal history computation, thus shifting his criminal history assessment from level III (the level cited in his plea agreement that the "parties believe[d]" was applicable) to level V. See U.S.S.G. § 5A.

When it became apparent during the sentencing hearings that the district court disagreed with the statements in the plea agreements on the amount of loss and on Paul Cain's date of entry into the conspiracy, each defendant moved to withdraw his guilty

plea. The district court denied those motions. On appeal, both defendants contend, first, that the district court was obligated to adopt the statements in the plea agreements with respect to the amount of loss and to Paul Cain's date of entry into the conspiracy and, second, that the district court should have allowed the defendants to withdraw their guilty pleas when it did not adopt those statements.

The judge who accepted the defendants' guilty pleas (in a joint hearing) was a different judge from the one who sentenced the defendants. As the basis for their contention that the judge who sentenced them was obligated to adopt the statements described above from the plea agreements, the defendants point to certain remarks by the judge who accepted their guilty pleas -- specifically, that he "would see that the entire [plea] agreement is carried out faithfully ... I'll see to it, it's carried out," and that he would "not only accept the plea agreement, but ... have it enforced." The defendants argue, essentially, that because of those remarks by the judge who accepted their guilty pleas, it would be inequitable to uphold the decision, made by the judge who sentenced them, to disregard the relevant statements in the plea agreements in determining the appropriate sentences.

The defendants have wisely been careful not to assert that the statements in question from the plea agreements are binding, as a matter of law, on the district court. See Fed. R. Crim. P. 11(e)(1), Fed. R. Crim. P. 11(e)(2); see also U.S.S.G. § 6B1.4(d) (policy statement) (stipulations of fact in plea agreements not binding for purposes of sentencing). The defendants contend, instead, that after the remarks by the judge who accepted their guilty pleas, they were "led ... to believe" and "were left with the unequivoca[l] belief" that the relevant statements in the plea agreements would be adopted for sentencing purposes; they argue, accordingly, that as a matter of "[p]ublic policy and the fundamental purposes of plea agreements," it would be unfair to allow the judge who sentenced them to disregard what they consider to be the promissory nature of the remarks by the judge who accepted their guilty pleas.

We have read the transcript of the joint hearing in which the district court accepted the defendants' guilty pleas. The judge addressed each defendant separately, but both defendants were present for the entire hearing. Each defendant stated during the joint hearing that he had read his plea agreement, understood its contents, and had talked with his lawyer about it.

In addition to the statements in the plea agreements with respect to the amount of loss and to Paul Cain's date of entry into the conspiracy, those agreements contained statements that the defendant "understands that the [federal sentencing guidelines] will apply to the sentence," that the plea agreement "binds only the parties ... [and] not ... the Court ... with respect to the appropriate Guideline levels," and that the defendant "understands that if the Court accepts this plea agreement but imposes a sentence which he does not like or agree with, he shall not be permitted to withdraw his plea." During the joint hearing, moreover, the government specifically drew attention to the provisions in the plea agreements that "the final decision about [the] guidelines is the Judge's, and that ... what we had anticipated may be the case, but is not binding on the … Court ... he's the one that makes that decision," and that "if the Court accepts this plea agreement, but imposes a sentence which you don't like, or you don't agree with ... you will not be permitted to withdraw your plea."

In light of each defendant's acknowledgment that he had read and understood his plea agreement, and in light of the government's specific attention during the joint hearing to the provisions of the plea agreements relating to the power of the district court to determine the appropriate sentences regardless of the expectations of the relevant defendant and the government, we do not believe that any reasonable person could have construed, or relied on, the remarks of the judge who accepted the defendants' guilty pleas as a promise that the statements in the plea agreements with respect to the amount of loss and to Paul Cain's date of entry into the conspiracy would be adopted for sentencing purposes. We therefore hold that even assuming that such an estoppel principle is available to the defendants, it is not inequitable, in the

circumstances of the defendants' cases, to uphold the decision, made by the judge who sentenced the defendants, to disregard the statements in question from the plea agreements in determining the appropriate sentences. Cf. United States v. Harris, 70 F.3d 1001, 1004 (8th Cir. 1995) (court may make its own calculations of offense level and criminal history rather than adopting the calculations in a plea agreement).

At oral argument, the government contended that the judge who accepted the defendants' guilty pleas might have thought that the defendants had consented to give assistance to the government. That contention is not made in the government's brief on appeal. Since we hold that it is not inequitable to uphold, in any event, the district court's decision to disregard the statements in question from the plea agreements, we need not consider the government's contention from oral argument.

## II.

The defendants further assert, however, that once the district court decided not to adopt the statements in the plea agreements with respect to the amount of loss and to Paul Cain's date of entry into the conspiracy, the district court should have allowed the defendants to withdraw their guilty pleas. The basis for that assertion seems to be the defendants' contention that the government broke the promises that it made to the defendants in the plea agreements by "refus[ing] to defend" the statements in question during the sentencing hearings.

In each plea agreement, the government stated that it was "in agreement" with the relevant defendant with respect to the amount of loss "readily provable." In Paul Cain's plea agreement, the government also stated that it was "in agreement" with Paul Cain with respect to the "belie[f]" of the parties that level III was the appropriate criminal history assessment for him. Neither of those statements of "agreement," in our view, amounts to a promise by the government to defend, at the sentencing hearings, the amount of loss or the criminal history assessment (which is affected by Paul Cain's date of entry into the conspiracy) in the plea agreements. Indeed,

construing those statements of "agreement" as promises to defend those statements is especially unreasonable in light of the additional provision in the plea agreements that both parties "retain their right to present their respective versions of the offense."

The only promises by the government that we see in the plea agreements are that the government "will not oppose a request [by the relevant defendant] for designation to a particular institution" in the event that a prison sentence is imposed and that the government "agrees not to seek any additional charges in the Western District of Missouri against [the relevant] defendant arising out of his activities which form the basis for the instant charge." Neither defendant has alleged that the government reneged on either of those commitments. Since we see no promises in the plea agreements that were broken by the government, we hold that the district court had no grounds to allow the defendants to withdraw their guilty pleas on that basis. See, e.g., Santobello v. New York, 404 U.S. 257, 262-63 (1971); see also United States v. Griggs, 71 F.3d 276, 281 (8th Cir. 1995). We turn, then, to an evaluation of the district court's factual findings on the amount of loss, for both defendants, and on the date of Paul Cain's entry into the conspiracy.

### III.

The district court found that the amount of loss for sentencing purposes (and hence the appropriate restitution as well) was $524,296.61. The district court stated that it based that finding on evidence from the trial of the defendants' brother, see United States v. Cain, 128 F.3d 1249 (8th Cir. 1997), and also held that each of the defendants in the cases before us could be held liable for the losses caused by all conspirators in the scheme (the three brothers plus two other officers of the company in question, both of whom pleaded guilty to conspiracy to commit mail fraud), regardless of when each defendant entered the conspiracy.

We remanded the case of the defendants' brother for resentencing because we held, as a matter of law, that the defendants' brother could not be held liable for the

losses caused by other conspirators in the scheme prior to the time the defendants' brother entered the conspiracy, even if the defendants' brother knew of the conduct that led to those losses.  Id. at 1253; see also U.S.S.G. § 1B1.3, application note 2, ¶ 8.  In addition, in the case of the defendants' brother, the district court (the same judge who sentenced the defendants) found that the amount of loss caused by all conspirators in the scheme was $508,096.61.  United States v. Cain, 128 F.3d at 1252.  We are unable to suggest any explanation for the discrepancy between that amount and the district court's finding in the defendants' cases on the amount of loss caused by all conspirators in the scheme ($524,296.61).  Finally, we note that the specific losses caused by all conspirators in the scheme are listed individually in the presentence reports in the defendants' brother's case and in the defendants' cases and are identical, yet total $508,379.71 -- an amount different from the district court's finding in any of the three cases on the losses caused by all conspirators in the scheme.

Because of all of these anomalies, we remand the defendants' cases to the district court for resentencing.  Before doing so, the district court may want to resolve the conflicts that we have noted on the amount of loss caused by all conspirators in the scheme.  The district court will certainly have to reconsider for which of the individual losses each defendant may be held liable, since that amount is dependent on each defendant's date of entry into the conspiracy.

IV.

In his plea agreement, Errol Cain admitted, in describing the factual basis for his guilty plea, that he entered the conspiracy in September, 1993.  He did not dispute that date in his sentencing hearing (although there is some ambiguous discussion on the point during a colloquy with the district court on whether Errol Cain could withdraw his guilty plea), and the district court evidently adopted that date for sentencing purposes while simultaneously holding that Errol Cain could be held liable for the amount of loss caused by all conspirators in the scheme, regardless of when he entered

the conspiracy. That date therefore controls the individual losses for which Errol Cain may be held liable for sentencing purposes (and hence for restitution as well).

In Paul Cain's plea agreement, he admitted, in describing the factual basis for his guilty plea, that he entered the conspiracy in September, 1993. The presentence report for Paul Cain stated, however, that he began working for the company in question in August, 1993 (and thus implied that he entered the conspiracy in August, 1993, as well). Paul Cain objected to that statement in the presentence report and disputed the statement again during his sentencing hearing. The district court found, though, that Paul Cain entered the conspiracy in mid-August, 1993. One effect of that finding, as discussed earlier, is to shift Paul Cain's criminal history assessment from level III to level V because of two prior convictions that become relevant. That finding, however, has a second effect as well, because it controls the individual losses for which Paul Cain may be held liable for sentencing purposes (and hence for restitution).

Because the district court held that Paul Cain could be held liable for the amount of loss caused by all conspirators in the scheme, regardless of when he entered the conspiracy, the district court did not address the question of which individual losses occurred before Paul Cain entered the conspiracy. Under the law, though, Paul Cain may not be held liable for individual losses before that time. See U.S.S.G. § 1B1.3, application note 2, ¶ 8; see also United States v. Cain, 128 F.3d at 1253. It is therefore necessary for us to evaluate the district court's factual finding that Paul Cain entered the conspiracy in mid-August, 1993.

The district court stated that it based that finding on the incorporation date of BEPB, Inc., an entity that was to provide management services for the separate company that employed the defendants. Paul Cain was a principal stockholder in BEPB, Inc. The district court also mentioned that there was evidence that Paul Cain received a "commission check" from BEPB, Inc., in late August, 1993. The district court characterized BEPB, Inc., as "a management corporation to make [the

conspiracy] operational, to further divert money" from the separate company that employed the defendants; the district court therefore held that Paul Cain "enter[ed] the conspiracy at that point."

The government offered no evidence in the sentencing hearing, however, that would support the district court's characterization of BEPB, Inc., and there is nothing in Paul Cain's plea agreement about BEPB, Inc. Even Paul Cain's presentence report contains nothing about BEPB, Inc., except an objective description that BEPB, Inc., was "a shell management company set up as an extra management layer" for the company that employed the defendants. In short, we see nothing in the record -- and the government's brief on appeal directs us to none -- to support the district court's conclusion with respect to the alleged conspiratorial purpose or role of BEPB, Inc. We therefore hold that the district court had no basis for characterizing BEPB, Inc., as conspiratorial in nature, and thus no basis for finding that Paul Cain entered the conspiracy when BEPB, Inc., was incorporated.

At oral argument, the government contended that Paul Cain was among those people who prepared certain misleading written materials in August, 1995, that were given to prospective investors. The government does not make that contention in its brief on appeal, and the district court did not use that contention as a basis for its conclusion. We therefore decline to consider that contention.

The only evidence in the record with respect to Paul Cain's date of entry into the conspiracy, then, is the admission in his plea agreement that he entered the conspiracy in September, 1993. We therefore hold that in resentencing Paul Cain, the district court is to use September, 1993, as the date of Paul Cain's entry into the conspiracy. We note that the use of that date for Paul Cain will affect both his criminal history assessment and the determination of the individual losses for which he may be held liable for sentencing purposes (and hence for restitution).

V.

On its own motion at the sentencing hearings and without prior notice to the defendants, the district court stated that it was considering increasing each defendant's offense level by two levels because the defendants exploited one particular victim's "religious vulnerability ... by using [the] ... ploy of how pious ... they were." The district court cited as its authority the guideline providing for an offense-level increase if "the defendant knew or should have known that a victim ... was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct." See U.S.S.G. § 3A1.1(b). The district court then did impose that two-level increase for each defendant.

The defendants correctly assert that the application notes to that guideline were amended after September, 1993 (when the relevant victim was defrauded), to remove the requirement that a victim have been "made a target" because of his or her vulnerability. Compare U.S.S.G. § 3A1.1, application note 1 (West 1993 edition) (with "targeting" requirement), and U.S.S.G. § 3A1.1, application note 2, ¶ 2 (West 1998 edition) (no specific reference to a "targeting" requirement). The defendants argue that, as a consequence, the application of that amendment to their cases would violate the constitutional guarantee against ex post facto laws, see U.S. Const. art. I, § 9, c1. 3, and, accordingly, that the pre-amendment version of the guideline and of its application notes is the appropriate version to be used with respect to determining their sentences. Under the pre-amendment version requiring "targeting" of a victim, the defendants contend, the evidence was insufficient to sustain a finding that the victim in question was "unusually vulnerable."

We agree that the application of the amendment to the defendants' cases would violate the constitutional guarantee against ex post facto laws. See, e.g., United States v. Hogan, 121 F.3d 370, 372 (8th Cir. 1997); see also United States v. Stover, 93 F.3d 1379, 1384-86 (8th Cir. 1996). The pre-amendment version is therefore the relevant one for sentencing purposes in the cases before us. See U.S.S.G. § 1B1.11(b)(1)

-11-

(policy statement); see also United States v. Bell, 991 F.2d 1445, 1452 (8th Cir. 1993). (None of the parties has asserted that other determinations for sentencing purposes were based on an inappropriate edition of the guidelines, and thus we need not address that question.)

We also agree that there is no evidence in the record (or in the transcript of the trial of the defendants' brother, for that matter) that would sustain a factual finding that the particular victim at issue was "made a target" because of her vulnerability to a sales pitch that included the singing of hymns, the reading and the gift of "a religious poem" to her, and representations that both defendants were ministers and were "so devout and so religious." See, e.g., United States v. Hogan, 121 F.3d at 372-73. We therefore reverse the district court's imposition of a two-level increase in offense level under U.S.S.G. § 3A1.1(b).

VI.

Errol Cain raises several other issues, all of which concern alleged error by the district court, alleged prosecutorial misconduct, or alleged ineffective assistance from his first lawyer, who represented him from September, 1995, through March, 1996. We use the points delineated in the summary of argument in Errol Cain's supplemental brief on appeal as our guide to the nature of those issues.

With respect to alleged error by the district court, we turn initially to Errol Cain's assertions that he entered his guilty plea without full knowledge, and therefore involuntarily under the law, and thus that the district court was wrong in denying his subsequent motion on that ground to withdraw his guilty plea. (We have considered and rejected in a previous section of this opinion Errol Cain's contention that he should have been allowed to withdraw his guilty plea because of the district court's decision to disregard certain statements in the plea agreement.) The basis for those assertions is Errol Cain's additional allegation that he was inadequately represented by his first lawyer in various ways.

We decline to consider those issues in the cases before us. The questions of whether Errol Cain's first lawyer provided ineffective assistance, and whether the district court should therefore have allowed Errol Cain to withdraw his guilty plea on that ground, are more properly raised in a separate petition under 28 U.S.C. § 2255. See, e.g., United States v. McNeely, 20 F.3d 886, 889 (8th Cir. 1994) (per curiam), cert. denied, 513 U.S. 860 (1994).

VII.

Errol Cain also argues that the district court erred in failing to hold that prosecutorial misconduct, in the form of pre-indictment delay, justified dismissing the indictment. See, e.g., United States v. Marion, 404 U.S. 307, 324-25 (1971); see also United States v. Lovasco, 431 U.S. 783, 790, 795, 795 n.17 (1977). The basis for Errol Cain's argument in that regard is his contention that the government deliberately delayed bringing his indictment until June, 1995, even though the indictment could have been brought in January, 1995 (when the government brought Paul Cain from North Carolina to Missouri, allegedly to testify before the federal grand jury considering the charges in the cases before us or because the indictment in the cases before us was allegedly imminent).

That delay, Errol Cain argues, allowed the entry of a felony conviction against him on state charges connected to an armed robbery and therefore provided the government with the prospective tactical advantage of being able to impeach any of his testimony in the cases before us by referring to that prior state conviction for a crime of violence. The government's prospective opportunity to impeach his testimony, Errol Cain asserts, acted as a deterrent to his testifying in his own behalf in the cases before us (and, implicitly, as a disincentive to proceeding to trial rather than pleading guilty, as he did instead). That deterrent was prejudicial, Errol Cain further asserts, because his own testimony would be the most effective -- and possibly the only -- means of rebutting the government's allegations in the cases before us that he had an intent to defraud.

To the extent that Errol Cain relies for his prosecutorial misconduct claim (and his associated claim of district court error in denying his motion to dismiss on that ground) on an allegation of ineffective assistance from his first lawyer, we decline to consider those arguments in the cases before us and refer him instead to the prospective remedy of a separate petition under 28 U.S.C. § 2255. In all other respects, however, we hold that by pleading guilty, Errol Cain waived arguments of prosecutorial misconduct and associated district court error in the cases before us. See, e.g., Tollett v. Henderson, 411 U.S. 258, 267 (1973), and United States v. Vaughan, 13 F.3d 1186, 1187-88 (8th Cir. 1994), cert. denied, 511 U.S. 1094 (1994) (guilty plea waives all nonjurisdictional claims arising from pre-plea events). We therefore affirm Errol Cain's conviction.

VIII.

Errol Cain further asserts that the district court had no basis in law for, and therefore erred in, ordering his return to state custody after he was sentenced on the federal charges at issue in the defendants' cases. He contends in that respect that no "writ or detainer" was ever issued to provide the authority for that order. The government's brief on appeal does not address this assertion.

Prior to his sentencing hearing, Errol Cain moved in the district court for a restraining order against his return to state custody on the same ground as asserted here. The government's response in the district court to that motion characterized it as "presumably" based on the "same premise" "underlying the motion to dismiss" and offered no substantive argument with respect to the motion for a restraining order. The district court denied that motion in a short order describing the motion as "concerning the motion to dismiss."

It appears to us that both the government and the district court misunderstood the nature of Errol Cain's motion for a restraining order and thus that the issue presented in that motion was never ruled on, or even considered, by the district court.

-14-

Upon remand for resentencing, therefore, we direct the district court to proceed as it deems appropriate with respect to Errol Cain's motion for a restraining order.

## IX.

Finally, Errol Cain contends that the district court's "approach to this case was subjective and bias[ed] in manner." We have read carefully all of the transcripts provided to us (including the transcript of the trial of the defendants' brother) and see no evidence of such subjectivity or bias. We reject, then, Errol Cain's contention to that effect.

## X.

For the reasons stated, we affirm Errol Cain's conviction, vacate the defendants' sentences, and remand the cases for limited further proceedings consistent with this opinion.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.