# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 98-2729

_____

United States of America,

        Appellee,

v.

Dennis C. Pospisil,

        Appellant.

_____

No. 98-2731

_____

Appeals from the United States
District Court for the
Western District of Missouri.

United States of America,

        Appellee,

v.

Barney L. Pospisil, Jr.,

        Appellant.

_____

Submitted: April 23, 1999

Filed: August 9, 1999

_____

Before WOLLMAN[1] and LOKEN, Circuit Judges, and JACKSON,[2] District Judge.
_____

WOLLMAN, Chief Judge.

Dennis C. Pospisil (Dennis) and his brother Barney L. Pospisil, Jr. (Barney) were convicted under 18 U.S.C. § 241 of conspiring to violate civil rights as a result of their involvement in a cross burning in Rushville, Missouri. Dennis was also convicted of interfering with housing rights in violation of 42 U.S.C. § 3631 and of using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Both men appeal their convictions and sentences. We affirm in part and reverse in part.

**I.**

On August 15, 1997, Liza Costa and her three children, ages 13, 11, and 7, moved into a home in Rushville. Mistakenly believing that the Costas were African-American,[3] Dennis, Devin Peck, and Ted Fenton made a plan to lead a caravan around the Costas' home and burn a cross in their yard to scare them out of town.

On August 22, 1997, Dennis welded metal pipe into the shape of a cross and sharpened the base of the cross to a point. Dennis then took the cross to Barney, explained that they wanted to burn it "in the niggers' yard," and asked if he had something to wrap around the cross to make it flammable. Barney said he would "take care of it." He directed his ex-girlfriend to wrap the cross in towels, and he secured the

_____

[1]Roger L. Wollman became Chief Judge of the United States Court of Appeals for the Eighth Circuit on April 24, 1999.

[2]The Honorable Carol E. Jackson, United States District Judge for the Eastern District of Missouri, sitting by designation.

[3]The Costas are of Cape Verdean ancestry, which Ms. Costa described as "Portuguese but of a darker nature." Trial Tr. at 300.

towels in place with wire. Barney then returned the cross to Dennis and agreed to meet him at 10:00 p.m. at the volunteer fire station, where the group was to meet and proceed to the Costa home.

When Dennis arrived at the fire station, he was wearing a .22 caliber revolver in a shoulder holster. Dennis, Peck, and Fenton took turns pouring gasoline on the cross. When Barney arrived, Dennis called the group together for a "town meeting." Approximately twenty people were present, including at least seven minors. Dennis talked about "niggers" moving into the community and urged the crowd to join in running them out of town. Barney stood directly beside Dennis, remarked that whites needed to stand up to "niggers," and gave a speech about "white power." When some of the young people indicated that they did not wish to participate in the attack on the Costas, Dennis and Barney shouted epithets at them and threw rocks and beer cans as they left the gathering.

After this episode, Barney suggested to Dennis that it was not a good night for the cross burning because too many people knew of the plan. Dennis said that he would burn the cross while Barney and the rest of the group went to Dennis's home. Dennis, Peck, and one of the minors then proceeded to the Costa home. With his revolver still displayed in his shoulder holster, Dennis stuck the cross in the front yard and lit it. Peck slashed the tires of the Costas' vehicle. They circled the Costa home in their vehicle, and Dennis fired several shots into the air as they drove away.

Dennis and Barney were indicted for conspiring to violate civil rights under 18 U.S.C. § 241 and for interfering with housing rights under 42 U.S.C. § 3631. Dennis was also indicted for using a firearm during a crime of violence in violation of 18 U.S.C. § 924(c). Dennis was convicted on all three counts and sentenced to 144 months' imprisonment. Barney was convicted of conspiring to violate civil rights and sentenced to thirty-seven months' imprisonment. In this consolidated appeal, they raise some claims jointly and some individually.

## II.

Both defendants raise the following claims of error: the district court's grant of the government's <u>Batson</u> challenge; the sufficiency of the evidence demonstrating an intent to threaten physical violence; the court's denial of their motion for a mistrial based on improper prosecutorial comments; and the court's imposition of two-level sentencing enhancements because the Costas were vulnerable victims.

## A.

The defendants claim that the district court erred when it found that their peremptory strikes of two African-American venire persons violated <u>Batson v. Kentucky</u>, 476 U.S. 79 (1986). <u>See</u> <u>Georgia v. McCollum</u>, 505 U.S. 42, 59 (1992) (recognizing that <u>Batson</u> prohibits both prosecutors and defendants from using peremptory strikes in a discriminatory manner). Specifically, they claim that they had a race-neutral reason for the strikes. We review for clear error the district court's finding that this reason was a pretext for intentional discrimination. <u>See</u> <u>Gee v. Groose</u>, 110 F.3d 1346, 1351 (8th Cir. 1997).

The defendants' race-neutral reason for the strikes was that the venire persons had heard news accounts of the cross burning and were government employees in some capacity. The district court found this pretextual, however, because Caucasians with similar experiences were not struck. Furthermore, defense counsel admitted during voir dire that "race was a factor" in making the strikes because African-Americans would "have a difficult time with this case and would[] identify with Miss Costa." Trial Tr. at 206-07. Nothing in the record leads us to conclude that the district court's finding of pretext was clearly erroneous.

In the alternative, the defendants ask us to carve out an exception to <u>Batson</u> for cases involving "race-related issues." We decline to do so. The Supreme Court "firmly has rejected the view that assumptions of partiality based on race provide a legitimate basis for disqualifying a person as an impartial juror." <u>McCollum</u>, 505 U.S. at 59. In cases that involve racially motivated crimes, counsel may question venire persons about race-related bias and strike them if there is specific reason to believe that they "would be incapable of confronting and suppressing their racism." <u>Id.</u> at 58. In this case, the defendants attempted to base their strikes on an assumption of partiality based on race rather than comments by the venire persons that demonstrated racism. Accordingly, we affirm the district court's grant of the government's <u>Batson</u> challenge.

The defendants also dispute the timeliness of the government's challenge and argue that the court should have declared a mistrial rather than seating the two African-Americans because the jury was given the impression that the defendants were racist. The record shows, however, that the government raised the challenge as soon as it learned of the defendants' peremptory strikes. In addition, the decision whether to declare a mistrial is within the sound discretion of the district court. <u>See</u> <u>Miller v. United States</u>, 135 F.3d 1254, 1256 (8th Cir. 1998). No abuse of that discretion occurred here.

**B.**

Next, the defendants challenge the sufficiency of the evidence showing that they intended to threaten the Costas with physical violence. The jury was instructed not to convict under 18 U.S.C. § 241 without a finding that "the defendant acted with the intent to threaten . . . the Costa family with physical force or violence, to incite others to imminent lawless action, or to cause . . . the Costa family reasonably to fear the imminent use of physical force or violence." Jury Instruction No. 11, Appellee's Br. at Add. 2. This instruction was consistent with instructions mandated by our decisions involving prosecutions for cross burning under section 241. <u>See</u> <u>United States v. Lee</u>,

6 F.3d 1297, 1304 (8th Cir. 1993) (en banc) (per curiam); United States v. J.H.H., 22 F.3d 821, 826 (8th Cir. 1994).

In Lee, the defendants stated that they burned the cross to "'make a statement, . . . to leave our kids alone'" and "to do something about 'the people that (sic) lived upstairs.'" 6 F.3d at 1303. The victims in that case testified that they were afraid and "understood that a burning cross meant that 'white people were trying to get rid of the blacks.'" Id. at 1303-04. We held that such statements by perpetrators and victims were sufficient evidence of an intent to threaten violence to present the case to the jury. Id. In J.H.H., the defendants' convictions under section 241 were upheld based on statements that they burned the crosses to "send a message to the . . . family to move out" and "to threaten and to intimidate the African-American family." 22 F.3d at 827.

Here, Dennis said "the only good nigger is a dead nigger" as he constructed the cross. Barney replied, "[I'm not] prejudiced, [I think] everybody ought to own [an African-American]." At the fire station, Dennis talked about "white supremists (sic) and how the niggers had no right being in our town" and urged the crowd to join in "running the niggers out of town." Barney "backed his brother up" and encouraged the crowd to "stick against the niggers." At trial, Dennis testified that the purpose of the cross burning was to "send a strong message and scare [the Costas] so they would move out of town."

In addition to the overwhelming evidence of the defendants' intentions, Costa testified that she and her children felt physically threatened by the cross burning. After seeing Dennis's weapon and observing the perpetrators' vehicle circle her home, Costa "was worried about getting shot." Her children had nightmares, stopped sleeping in their rooms, and began checking the house for intruders. Costa worried that the cross burners would return to hurt her children and interpreted the cross burning to mean "that I should get out of town, that there would be more to come if I didn't heed their warning." In light of Lee and J.H.H., this was sufficient evidence for the jury to

conclude that the defendants intended to threaten the Costas with physical violence in violation of section 241.

## C.

Both defendants claim that the district court erred by denying their motion for a mistrial when the government asked a witness at trial whether he had visited the defendants "in prison." We review the court's ruling on the motion for an abuse of discretion. See Miller, 135 F.3d at 1256. Generally, a curative instruction will adequately remedy improperly admitted testimony. See id. (citing United States v. Flores, 73 F.3d 826, 831 (8th Cir. 1996)).

In this case, defense counsel objected to the government's statement as soon as it was made. The court sustained the objection and adopted the following curative instruction, which was proposed by Dennis:

> Ladies and gentlemen, you should disregard and draw no inference from anything that [government counsel] said about contact this witness might have had with any of the defendants. None of the defendants are in prison and none of them have been convicted of any offense related to August 22, 1997.

Appellee's Br. at 26. We see no indication in the record that this instruction was ineffective. It clearly stated that the defendants were not in prison and had not been convicted of any crime related to the cross burning. Accordingly, the district court did not abuse its discretion in denying the motion for mistrial.

## D.

Both defendants also argue that the district court erred in increasing their base offense levels by two on the basis of a finding that the Costas were vulnerable victims.

-7-

See U.S.S.G. § 3A1.1(b)(1). Specifically, the defendants claim that they targeted the Costas because of their race, which was the basis for a three-level increase under section 3A1.1(a), not because they were vulnerable. The Guidelines, however, no longer require a showing that victims were targeted because they were vulnerable to warrant an increase under section 3A1.1(b)(1). Rather, the sentencing court may impose the increase "if 'the defendant knew or should have known that a victim . . . was unusually vulnerable due to age, physical or mental condition, or that a victim was otherwise particularly susceptible to the criminal conduct.'" United States v. Cain, 134 F.3d 1345, 1351 (8th Cir. 1998) (quoting U.S.S.G. § 3A1.1(b)(1), comment. (n.2)).

The record shows that Dennis referred to the Costas as "little niglets." The district court correctly concluded that this demonstrated Dennis's knowledge that young children resided at the Costa home. See Dennis's Sentencing Tr. at 10-11. In addition, the court noted that the victims were particularly vulnerable because they were new in town, another fact of which Dennis was aware. Accordingly, the court did not clearly err in finding that Dennis knew that the Costas were vulnerable victims and increasing his base offense level by two.

With regard to Barney, however, the court did not find that he used the term "niglet," that that term was used in his presence, or that he was aware that the Costas had just moved to Rushville. Upon applying the two-level increase to Barney's base offense level, the court simply stated, "I am going to be consistent in my legal findings as to vulnerability of the victims. I think these were 3A1.1(b) vulnerable victims." The court did not find that Barney knew or should have known that the Costas were vulnerable, as section 3A1.1(b)(1) explicitly requires, nor does the record contain evidence that would support such a finding. Accordingly, we reverse the court's imposition of the two-level increase in Barney's base offense level.

## III.

Dennis raises three additional claims individually. He argues that the district court erred in denying his motion to sever his trial, that there was insufficient evidence to support his conviction for "use" of a firearm under 18 U.S.C. § 924(c), and that the court erred in sentencing him as a "leader or organizer."

## A.

Dennis moved to sever after the government introduced evidence that Barney abused his ex-girlfriend and owned a sign with the phrase "Official Runnin' Nigger Target."

To warrant reversal of the denial of the severance motion, Dennis must show that this evidence caused him "real prejudice." See United States v. Lara, 891 F.2d 669, 671 (8th Cir. 1989). In admitting the evidence, the court instructed the jury to consider it only with respect to Barney and not the other defendants. See Trial Tr. at 474-75 (the sign), 506-07 (the abuse). Limiting instructions are generally sufficient to prevent real prejudice. See Lara, 891 F.2d at 672. Dennis has no basis for his assertion that the jury was unable to compartmentalize the evidence against Barney. Thus, the district court did not abuse its discretion in denying the motion.

## B.

Dennis contends that there was insufficient evidence that he "used" a firearm in relation to the cross burning in violation of 18 U.S.C. section 924(c). In Bailey v. United States, the Supreme Court acknowledged that "use" is not simply a synonym of "possess." See 516 U.S. 137, 148 (1995). Rather, Congress intended "use" to mean "actively employ." Id. "The active-employment understanding of 'use' certainly

includes brandishing, displaying, bartering, striking with, and, most obviously, firing or attempting to fire a firearm." Id.

Dennis does not dispute that he displayed his revolver in plain view in a shoulder holster during the cross burning. Nor does he contest that he actually fired shots into the air as he rode away from the scene of the crime. His claim that the firearm played no part in the crime is directly contradicted by Costa's testimony that she was "worried about getting shot" after she noticed the gun and observed the perpetrators circling her home. There can be no doubt that the display of the firearm during the cross burning added to the threatening and intimidating nature of the act. Accordingly, there was sufficient evidence to support the jury's finding that Dennis used a firearm in violation of section 924(c).

Dennis also claims that his conviction under 42 U.S.C. § 3631 cannot be a predicate offense for section 924(c) because the verdict form on the section 3631 count did not mention violence or the use of fire. The jury instruction on the section 3631 count, however, explicitly required the jury to find that Dennis's conduct "involved the use or attempted use of fire." Jury Instruction No. 17, Dennis's Br. at Add. 13. The section 3631 conviction was therefore a conviction for a "crime of violence" and thus a proper predicate offense under section 924(c).

**C.**

Dennis claims that the court clearly erred in finding him a "leader or organizer" of extensive criminal activity under section 3B1.1(a) of the Sentencing Guidelines. There was evidence in the record, however, that Dennis built the cross, led the meeting at the fire station, and actually burned the cross in the Costas' yard. It is undisputed that the criminal activity involved at least five participants. Accordingly, the district court's imposition of the four-level increase was not clearly erroneous.

## IV.

Barney also raises several sentencing issues independently. He argues that the jury was required to make a special finding that he selected the victims because of their race, that the district court erred in finding that he recruited minors to participate in the crime, and that the court erred in finding that he did not have a "minor role" in the crime.

## A.

Section 3A1.1(a) of the Sentencing Guidelines allows a four-level increase if "the finder of fact at trial . . . determines beyond a reasonable doubt that the defendant intentionally selected any victim . . . because of . . . race." Barney argues that the jury was required to make a special finding to that effect for the district court to impose the increase under section 3A1.1(a).

Although section 241 is not on its face limited to racially motivated crimes, the jury instructions on the section 241 count expressly incorporated language about the race of the victims. See Jury Instructions No. 11-12, Appellee's Br. at Add. 2-3. The jury found beyond a reasonable doubt that Barney took part in the conspiracy to intimidate the Costas or interfere with their rights "on account of their race, color, or national origin." Id. This finding provided a sufficient basis for the imposition of the four-level increase under section 3A1.1(a).

## B.

Barney also claims that the court erred in finding that he encouraged minors to participate in the cross burning and imposing a two-level increase under section 3B1.4. The evidence showed, however, that Barney gave a speech about "white power" at the fire station shortly before the cross burning. See Trial Tr. at 352 (Barney said "who

runs the power lines . . . the whites do"), 613 ("Barney chimed in, white power"), 634 (Barney "said that the white people run the power company and we provide the black people the light and the power and we don't need to give them any more than what we have to"). It is undisputed that minors were present during this speech. The record also shows that when a group of boys attempted to leave the fire station, Barney threw a beer can and joined in calling them "nigger lovers" and "pussies." Accordingly, the court did not clearly err in finding that Barney encouraged minors to participate in the offense under section 3B1.4.

## C.

Finally, Barney argues that the court erred in denying his request for a two-level decrease under section 3B1.2(b) for his having played a minor role in the offense. Although Barney may have played a smaller role in the cross burning than Dennis, there was evidence in the record that he played a critical part in making the cross flammable and that he gave a white-power speech to the crowd at the fire station shortly before the cross burning. Thus, we cannot say that Barney's involvement was "an isolated unsubstantial instance." United States v. Alaniz, 148 F.3d 929, 937 (8th Cir.), cert. denied, 119 S. Ct. 604 (1998). Further, "the mere fact that the defendant was less culpable than his co-defendant does not entitle the defendant to 'minor participant' status as a matter of law." United States v. West, 942 F.2d 528, 531 (8th Cir. 1991). The district court's denial of the two-level decrease under section 3B1.2(b) was not clearly erroneous.

## Conclusion

Because the record does not establish that Barney knew or should have known that the Costas were vulnerable victims, we reverse the district court's increase of his base offense level under U.S.S.G. § 3A1.1(b)(1), and we remand his case for

resentencing. We affirm the convictions and sentences for both Barney and Dennis in all other respects.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.