# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 03-2242

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Peter Clayton Wingate, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 9, 2004
Filed: June 2, 2004

_____

Before RILEY and RICHARD S. ARNOLD, Circuit Judges, and HOVLAND,[1] District Judge.

_____

RILEY, Circuit Judge.

Peter Clayton Wingate (Wingate) pled guilty to an armed robbery he committed when he was eighteen years old. At sentencing, the district court[2] increased Wingate's offense level for using a person under eighteen years old to commit the

_____

[1]The Honorable Daniel L. Hovland, Chief Judge, United States District Court for the District of North Dakota, sitting by designation.

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

offense or to assist in avoiding detection or apprehension. Wingate appeals his sentence. We affirm.

## I. BACKGROUND

On September 27, 2002, Wingate robbed the Valley Bank and Trust in New Ulm, Minnesota, taking approximately $81,579. Earlier in the day, Wingate set a diversionary car fire in New Ulm to draw police attention away from the bank. Wingate carried a .22 caliber Henry survival rifle in his pants during commission of the robbery, but did not display it. Wingate told the teller to open the safe, informed her he had two accomplices outside, and said anyone who attempted to exit the bank before he left would be shot. Weeks before the bank robbery, Wingate met with two minors, J.B., age 17, and A.C., age 16, to discuss and plan the robbery.

Federal Bureau of Investigation Special Agent Michael Dudley (Special Agent Dudley) interviewed Wingate following his arrest. During the interview, Wingate stated he and Gary Dey (Dey) originally devised the plan for the robbery. The two had discussed a diversion, and decided they needed others to assist them. Approximately two weeks to one month before the robbery, Wingate and Dey met with A.C. and J.B. at J.B.'s house. During the meeting, Wingate and Dey described the robbery to the minors, the minors agreed to cooperate, and all involved agreed to split the robbery proceeds.

In his plea agreement, Wingate agreed he set the diversionary car fire in a salvage yard in New Ulm. At the change of plea hearing, Wingate again admitted he set the diversionary fire, and also said the two minors, J.B. and A.C., helped set the fire. Later, Wingate stated that, although the two minors were not with him when he set the fire, J.B. and A.C. dropped Wingate off at the salvage yard and, after he set the fire, they picked him up and drove to A.C.'s house to pick up a scanner. From there, Wingate, J.B., and A.C. drove to J.B.'s house, then the two minors drove Wingate to a wooded area near the bank, where Wingate surveilled the bank for approximately

thirty minutes before robbing it.  At some point during the robbery, unknown to Wingate, the two minors came to the bank and stayed outside.  Wingate testified he thought the two minors would leave the area after they dropped him off at the bank.

After the robbery, Wingate ran to a river nearby, but eventually went to J.B.'s house and spent the night there.  Later, Wingate split the stolen money with five people, including J.B. and A.C.  In a written confession, Wingate admitted all the people with whom he had divided the robbery proceeds had, in some way, helped plan or prepare for the robbery, and the two minors "helped me the day of the robbery, before the robbery."

At Wingate's sentencing hearing, the district court applied a two-level enhancement under section 3B1.4 of the United States Sentencing Guidelines (Guidelines).  The district court found the applicable guideline range was 78 to 97 months, and sentenced Wingate to 78 months.  Wingate appeals, arguing (1) the enhancement for use of a minor under section 3B1.4 exceeds its authorizing legislation and does not apply to a defendant under twenty-one years of age, and (2) the facts do not support a finding Wingate "used" a minor.

## II.    DISCUSSION
### A.      Standard of Review
"The correct application of the guidelines is a question of law subject to de novo review, while a factual determination of the sentencing court is reviewed under a clearly erroneous standard."  United States v. Tirado, 313 F.3d 437, 440 (8th Cir. 2003) (citation omitted).

### B.      Authority to Promulgate Section 3B1.4
Wingate argues the United States Sentencing Commission (Commission) exceeded its authority when it promulgated section 3B1.4, contending this section's authorizing legislation "expressly limited any enhancement to defendants aged 21

years or older." Conversely, the government claims the Violent Crime Control and Law Enforcement Act of 1994, Pub. L. 103-322 § 140008, 108 Stat. 1796 (1994), directed that defendants twenty-one years and older receive the two-level enhancement, not that defendants eighteen to twenty years old were *not* to receive the enhancement. Because the authorizing legislation did not exclude eighteen to twenty-year-olds from the coverage of the enhancement, the government argues, the Commission had authority to adopt section 3B1.4 in its current form.

Under the Violent Crime Control and Law Enforcement Act of 1994, Congress directed the Commission to promulgate an enhancement providing that "a defendant 21 years of age or older . . . shall receive an appropriate sentence enhancement if the defendant involved a minor in the commission of the offense." Pub. L. 103-322 § 140008(a), 108 Stat. 1796. The Commission's guideline mandates a two-level enhancement if a defendant used or attempted to use someone under eighteen years old "to commit the offense or assist in avoiding detection of, or apprehension for, the offense." U.S.S.G. § 3B1.4 (2003). The guideline, however, does not mention "what age a defendant needed to be for the guideline to apply." United States v. Kravchuk, 335 F.3d 1147, 1158 (10th Cir. 2003).

Congress has granted the Commission "significant discretion in formulating guidelines for sentencing convicted federal offenders." United States v. LaBonte, 520 U.S. 751, 757 (1997) (citation omitted). Due to the Commission's expertise, courts defer to the Commission's interpretation of a Congressional directive as long as the interpretation is consistent with the directive's plain language. United States v. Murphy, 254 F.3d 511, 512 (4th Cir. 2001). Unless the guideline is "at odds" with the Congressional directive, the Commission also has discretion to enlarge the class of defendants to whom a particular enhancement applies. United States v. Ramsey, 237 F.3d 853, 857 (7th Cir. 2001) (citing LaBonte, 520 U.S. at 757).

-4-

Three circuits have ruled section 3B1.4 may be applied to defendants under twenty-one years old. Kravchuk, 335 F.3d at 1158-59; Murphy, 254 F.3d at 513; Ramsey, 237 F.3d at 858. In Kravchuk, the Tenth Circuit recognized the Fourth Circuit in Murphy and the Seventh Circuit in Ramsey "note that Congress certainly intended the enhancement to apply to those *over* twenty-one, but that Congress's directive made no mention of any special policy for those *under* twenty-one." Kravchuk, 335 F.3d at 1158. Accordingly, the Tenth Circuit ruled the Congressional directive does not conflict with section 3B1.4's plain language and, thus, the guideline is valid. Id. at 1158-59.

Conversely, the Sixth Circuit found section 3B1.4 inapplicable to defendants under age twenty-one. United States v. Butler, 207 F.3d 839, 849-52 (6th Cir. 2000) (Jones, J., concurring and writing for the court in ruling section 3B1.4 inapplicable to defendants under age twenty-one).[3] The court in Butler opined the Commission "failed to comport with a clear Congressional directive when it eliminated the requirement that the defendant be at least twenty-one years old to be subject to enhancement under U.S.S.G. § 3B1.4." Id. at 849 (Jones, J., concurring).

"When construing the Guidelines, we look first to the plain language, and where that is unambiguous we need look no further." United States v. Ashley, 342 F.3d 850, 852 (8th Cir. 2003) (citation omitted). We conclude section 3B1.4's wording does not directly conflict with the plain language of Congress's directive, which requires the enhancement apply to defendants age twenty-one and over. The Commission's guideline encompassed Congress's directive because, under section 3B1.4, defendants over age twenty-one will receive the enhancement. The enhancement merely extends the application to defendants under age twenty-one.

---

[3]The Sixth Circuit majority opinion on the issue of the applicability of section 3B1.4 was actually contained in a concurring opinion, written on behalf of two judges and addressing section 3B1.4. Butler, 207 F.3d at 849-52 (Jones, J., concurring).

Ramsey, 237 F.3d at 858. Although Congress stated the guideline "shall" apply to defendants over twenty-one years old, the guideline does not automatically exclude its application to those under age twenty-one. We have previously observed Congress gave the Commission "broad authority" to promulgate the Guidelines. United States v. Webb, 214 F.3d 962, 965 (8th Cir. 2000). We join the Fourth, Seventh, and Tenth Circuits in holding section 3B1.4 is not contrary to the Congressional directive, and section 3B1.4 validly applies to defendants under age twenty-one. See Kravchuk, 335 F.3d at 1158-59.

## C.    Facts Supporting Application of Section 3B1.4

Wingate also argues the facts do not support a finding he actually "used" minors during the bank robbery. Wingate claims the term, "use" requires "active employment," and he did not "actively employ" the minors. Instead, Wingate contends the minors were more of an "audience" than "participants."

Under section 3B1.4, an enhancement is appropriate "[i]f the defendant used or attempted to use a person less than eighteen years of age to commit the offense." "'Used or attempted to use' includes directing, commanding, encouraging, intimidating, counseling, training, procuring, recruiting, or soliciting." U.S.S.G. § 3B1.4, cmt. n.1. In United States v. Warner, 204 F.3d 799, 800-01 & n.2 (8th Cir. 2000), we held the district court did not plainly err in applying the enhancement where the defendant suggested to undercover officers that he would leave his daughter with the officers while he took the officers' money to his drug supplier. In United States v. Pospisil, 186 F.3d 1023, 1031-32 (8th Cir. 1999), we affirmed an enhancement, without requiring active involvement, when a defendant encouraged minors to participate in a cross burning, although the minors apparently did nothing except attend a speech the defendant gave on "white power," shortly before the cross burning. In Pospisil, we focused on the defendant's acts rather than any affirmative acts on the part of the minors involved. See id. at 1031-32 (concluding the district court did not err in finding the defendant "encouraged" the minors).

-6-

Focusing on Wingate's actions in this case, the district court properly assessed the two-level enhancement. Wingate recruited and solicited the two minors to help him commit the crime. Wingate admitted to Special Agent Dudley that he discussed the plan for the robbery with the two minors and others. On one occasion, Wingate admitted the minors helped him create the diversionary car fire, presumably because the two minors transported Wingate to and from the diversionary fire site. The minors later dropped Wingate at the bank robbery site. At sentencing, the bank's vice president testified Wingate threatened the tellers by saying both Wingate and people outside the bank would harm them.

The district court found Wingate, not the minors, conceived the idea for a diversionary fire. The district court further found, although the minors did not participate in the fire, the minors knew Wingate was setting the fire and picked him up after he lit it. The district court noted the agreement to split the booty of the bank robbery among Wingate, the minors, and others.

Wingate affirmatively acted to involve the minors in the offense and to assist him in accomplishing the bank robbery. But for Wingate's conduct, J.B. and A.C. would not have been involved in this crime. Accordingly, the district court's factual findings at sentencing regarding Wingate's use of minors during the commission of the offense were not clearly erroneous, and the district court properly applied the two-level enhancement under section 3B1.4.

## III.  CONCLUSION

For the reasons stated, we affirm.

_____