# United States Court of Appeals

## For the Eighth Circuit

_____

No. 19-2537

_____

United States of America,

*Plaintiff - Appellee*,

v.

Shawn Kelly Thomason,

*Defendant - Appellant.*

_____

No. 19-3702

_____

United States of America,

*Plaintiff - Appellee*,

v.

Shawn Kelly Thomason,

*Defendant - Appellant.*

_____

No. 20-1230

_____

United States of America,

*Plaintiff - Appellee*,

v.

Shawn Kelly Thomason,

*Defendant - Appellant.*
_____

Appeals from United States District Court
for the District of Minnesota
_____

Submitted: October 28, 2020
Filed: March 16, 2021
_____

Before COLLOTON, SHEPHERD, and GRASZ, Circuit Judges.
_____

COLLOTON, Circuit Judge.

Shawn Kelly Thomason pleaded guilty to one count of interstate stalking under 18 U.S.C. § 2261A(1). The district court[1] sentenced him to 45 months' imprisonment, followed by a three-year term of supervised release, and ordered him to pay restitution to the victim. Thomason raises six arguments on appeal. None of them warrants reversal.

The offense arose from a relationship between Thomason and a victim who is identified by her initials as JNS. They began a relationship in Michigan during the fall of 2016. JNS ended the relationship in May 2018 and later moved to Minnesota.

_____

[1]The Honorable Eric C. Tostrud, United States District Judge for the District of Minnesota.

The two initially remained in contact, but JNS later blocked Thomason's phone number, diverted his e-mails, and told Thomason in October 2018 that she was not interested in resuming their relationship. In October or November, Thomason traveled from his home in Michigan to Minnesota and placed a tracking device on JNS's car. Thomason returned at least once to replace the device.

On December 6, 2018, Thomason approached JNS while she sat in her car outside her home. Thomason was arrested the next day for stalking. Officers searched Thomason's rental car and discovered, among other items, a handgun, a taser, electrical tape, women's clothing, and writings that included notes to JNS. Federal officers later executed a search warrant at Thomason's home, where they discovered lists and materials to prepare for his confrontation with JNS.

A grand jury charged Thomason with interstate stalking, and he pleaded guilty pursuant to a plea agreement. The court imposed a term of 45 months' imprisonment and ordered Thomason to pay $8,606.44 in restitution to JNS. Thomason appeals the conviction, sentence, and restitution order.

First, Thomason argues that the district court violated his right to freedom of speech under the First Amendment by considering the writings found in his car. Because Thomason raises this claim for the first time on appeal, we review for plain error. *See* Fed. R. Crim. P. 52(b). To obtain relief, Thomason must show an obvious error that affected his substantial rights and seriously affected the fairness, integrity, or public reputation of judicial proceedings. *United States v. Olano*, 507 U.S. 725, 732-33 (1993).

In explaining its decision to depart upward from the advisory guideline range, the district court explained that it was "concerned" by Thomason's writings and characterized some of the material as "frightening." As an example, the court quoted a note found in Thomason's car as follows: "Frankly, I don't give [an expletive] if

this was your first relationship or your tenth. . . . People get shot over things like this. . . . When you piss someone off, by defaulting on your promises and/or commitments you should be aware of the consequences."

Thomason argues that because the purpose of the writing was "therapeutic" or "cathartic," the speech is protected and cannot be used as a basis for imposing a sentence. He relies on *Elonis v. United States*, 135 S. Ct. 2001 (2015), where the Court held that a defendant charged with making a threatening communication could not be convicted based solely on how a reasonable person would react to the communication. *See id.* at 2004-05, 2012. *Elonis*, however, concerned only the elements of the federal offense and did not address any First Amendment issues. *See id.* at 2012. The federal sentencing statutes, by contrast, place "[n]o limitation . . . on the information concerning the background, character, and conduct of a person convicted of an offense which a court . . . may receive and consider," 18 U.S.C. § 3661, and "the Constitution does not erect a *per se* barrier to the admission of evidence concerning one's beliefs . . . at sentencing simply because those beliefs . . . are protected by the First Amendment." *Dawson v. Delaware*, 503 U.S. 159, 165 (1992).

Here, despite Thomason's assertion that the writings had "therapeutic" value, the court found that Thomason engaged in "an armed abduction in the planning." The court determined that Thomason's "activities were not the produc[t] of a spontaneous or emotional reaction, but rather considerable planning and intentional execution." R. Doc. 73, at 4. The court cited Thomason's writings as evidence that his actions were "responses to the victim's behavior." In other words, the writings were evidence of Thomason's intent to commit the charged offense and tended to show that Thomason presented a danger to the victim and to the community. The court thus properly considered the writings in evaluating the need for a sentence to reflect the seriousness of the offense, to provide just punishment, and to protect the public. *See* 18 U.S.C. § 3553(a)(2). There was no violation of the First Amendment.

Second, Thomason argues that his conviction must be vacated because the prosecution engaged in misconduct by referring to him with masculine pronouns and with "stereotypes" like "gunman" and "boyfriend." He also contends that the prosecution ignored his diagnosis of gender dysphoria by claiming that the women's clothing found in his car was for JNS when the record showed that Thomason sometimes wears women's clothing.

To succeed on a claim of prosecutorial misconduct, Thomason must show that flagrant misconduct caused substantial prejudice to his rights. *United States v. Manthei*, 979 F.2d 124, 126 (8th Cir. 1992). Because Thomason did not raise the issue before the district court, we review only for plain error.

The grand jury charged Thomason in January 2019, and Thomason pleaded guilty in March 2019. Thomason first indicated a preference for the use of gender-neutral pronouns in a letter dated May 29, 2019, that defense counsel sent to the probation office and prosecutors about sentencing. Two months earlier, Thomason had signed a plea agreement that referred to him with masculine pronouns. *See* R. Doc. 43, at ¶ 2 ("[T]he defendant drove from his home in Hazel Park, Michigan . . . .") ("The defendant agrees that he traveled from Michigan to Minnesota . . . ."), ¶ 3 ("The defendant agrees that he used interactive computer services . . . ."), ¶ 4 ("The defendant understands and agrees that he has certain rights . . . ."), ¶ 6 ("The defendant understands that if he were to violate any condition of supervised release . . . ."), ¶ 10 ("The defendant represents that he will fully and completely disclose . . . ."), ¶ 11 ("The defendant agrees that he will not contact the victim . . . .").

In the letter to the probation office, Thomason asked that, "to the extent possible, gender neutral pronouns be used when referring to him." The letter said: "He prefers use of the pronouns: 'they,' 'them' and 'their.'" But the letter itself referred to Thomason as "he" and "him" in making the request, and said that "[f]or

the sake of clarity," Thomason's own objections to the draft report "may use the masculine pronouns." As the filings in this case illustrate, clarity suffers and confusion may follow when legal writing refers to a single individual as "they," especially when the materials advert to other actors who are naturally described as "they" or "them" in the traditional plural.[2]

Even after defense counsel's letter to the probation office, Thomason's sentencing memorandum used masculine pronouns in some instances. *See* R. Doc. 60, at 10 n.1 ("This is, in part, why the death of his 14-year[-]old cat was so difficult."), 29 ("Thomason explained the reason he was leaving to go home."), 37 n.5. The prosecution likewise used masculine pronouns in its sentencing memorandum.

At the sentencing hearing in July 2019, a prosecutor said that the government would "do [its] best to be respectful of the defendant's wish to be referred to in gender-neutral pronouns," but explained that it was "a new development" in the case that conflicted with "eight months of habit of using male pronouns." The prosecutor and defense counsel then referred to Thomason with masculine pronouns during the hearing. The government asked a witness: "When the defendant was arrested on December 7th of 2018, was he driving his own car?" There was no objection. In discussing documents seized from Thomason's car, defense counsel asked a witness to confirm that there were "[l]ots of other writings that he had with him, right?"

---

[2]*E.g.*, R. Doc. 60, Defendant's Sentencing Memorandum, at 32 ("Shawn's GPS told federal agents that they were at McDonald's."); *id*. at 37 n.5 ("The event was 20 years ago, but what Thomason recalls is that he was on the phone and she kept trying to grab the phone away and yell over them and as they moved away from her, they used their elbow to push her body away from them."); Appellant's Br. 15 ("Thomason was entirely cooperative with the arresting police officers and disclosed that they were in the possession of a firearm."); Appellee's Br. 25-26 ("The officer kept the trackers as evidence. At some point before their arrest on December 7, Thomason took a photo of their surveillance log and disposed of the hard copy.").

Thomason did not object to the use of masculine pronouns until the end of a restitution hearing on November 12, 2019. At that point, he objected to "all 134 instances of purposeful and deliberate misgendering of me in this case as it pertains to the restitution memorandums."

We reject Thomason's argument that alleged prosecutorial misconduct justifies vacating his conviction. By pleading guilty, Thomason waived all non-jurisdictional claims arising from events before the plea. *See United States v. Vong*, 171 F.3d 648, 654 (8th Cir. 1999); *United States v. Cain*, 134 F.3d 1345, 1352-53 (8th Cir. 1998). There is no basis for resentencing either. By signing a plea agreement that used masculine pronouns, acknowledging that his own sentencing letter would use masculine pronouns for the sake of clarity, and using masculine pronouns through counsel at the sentencing hearing, Thomason waived any claim of misconduct by opposing counsel. And even if we assume forfeiture rather than waiver, there is no plain error warranting relief. Thomason cites no authority for the proposition that litigants and courts must refer to defendants by their preferred pronouns, and the only cited authority is to the contrary. *See United States v. Varner*, 948 F.3d 250, 254 (5th Cir. 2020). Nor is there any showing that the use of pronouns affected the outcome of the proceeding.[3]

On Thomason's contention that the government disregarded his diagnosis of gender dysphoria, there was no prosecutorial misconduct. The prosecution presented evidence that the women's clothing discovered in Thomason's car was sized to fit the victim, not Thomason. On that basis, the government permissibly argued that the clothing was evidence of a plan to kidnap the victim. The record is clear, moreover, that the district court sentenced Thomason based on his conduct, not due to his gender or gender identity.

---

[3]Consistent with the proceedings in the district court, and for the sake of clarity, we use masculine pronouns when referring to Thomason in this opinion.

-7-

Third, Thomason argues that the government breached the terms of his plea agreement by seeking restitution under both the Mandatory Victim Restitution Act, 18 U.S.C. § 3663A, and the Violence Against Women Act. 18 U.S.C. § 2264. There was no breach. Thomason's plea agreement stated that the Mandatory Victim Restitution Act applied, but did not provide that it was the *only* basis for restitution. The agreement did not forbid the government to seek restitution under both statutes.

Fourth, Thomason argues that the interstate stalking statute, 18 U.S.C. § 2261A(1), is an unconstitutional "overreach of the federal legislature into a realm historically and exclusively controlled by the state police powers." He does not challenge the authority of Congress to enact the provision under its power to regulate interstate commerce, but cites *Printz v. United States*, 521 U.S. 898, 923-24 (1997), for the proposition that the federal statute is "defective." *Printz* explained that the Commerce Clause "authorizes Congress to regulate interstate commerce directly; it does not authorize Congress to regulate state governments' regulation of interstate commerce." *Id*. at 924 (quoting *New York v. United States*, 505 U.S. 144, 166 (1992)). This case involves a federal prosecution under a federal criminal statute. There is no regulation of state governments that would offend the rule of *Printz*.

Fifth, Thomason argues that he was deprived of the assistance of counsel under the Sixth Amendment because his trial counsel was ineffective. Following our usual practice, we decline to address his ineffective assistance of counsel claim on direct appeal because the record is not fully developed. *See United States v. Sanchez-Gonzalez*, 643 F.3d 626, 628-29 (8th Cir. 2011).

Sixth, Thomason appeals the district judge's denial of Thomason's motion for recusal. Thomason argues that the judge showed bias by his "willingness to participate" in alleged misgendering, and by making unfavorable rulings. "[J]udicial rulings alone almost never constitute a valid basis for a bias or partiality motion," and "judicial remarks . . . that are critical or disapproving of, or even hostile to" a party

"ordinarily do not support a bias or partiality challenge." *Liteky v. United States*, 510 U.S. 540, 555 (1994). Thomason's motion offered nothing beyond the matters that *Liteky* deems ordinarily insufficient. The judge did not abuse his discretion by denying Thomason's motion for recusal.

The judgment of the district court is affirmed.

_____